# WHITTEN v. TOMLINSON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF CONNECTICUT.

No. 619. Argued November 20, 1895. — Decided December 16, 1895.

Under section 753 of the Revised Statutes, the courts of the United States have power to grant writs of *habeas corpus* for the purpose of inquiring into the cause of restraint of liberty of any person in jail, in custody under the authority of a State, in violation of the Constitution, or of a law or treaty of the United States; but, except in cases of peculiar urgency, will not discharge the prisoner in advance of a final determination of his case in the courts of the State; and, even after such final

determination in those courts, will generally leave the petitioner to his remedy by writ of error from this court.

In a petition for a writ of *habeas corpus*, verified by oath, as required by Rev. Stat. § 754, only distinct and unambiguous allegations of fact, not denied by the return, nor controlled by other evidence, can be assumed to be admitted.

A warrant of extradition of the Governor of a State, issued upon the requisition of the Governor of another State, accompanied by a copy of an indictment, is *prima facie* evidence, at least, that the accused had been indicted and was a fugitive from justice; and, when the court in which the indictment was found had jurisdiction of the offence, is sufficient to make it the duty of the courts of the United States to decline interposition by writ of *habeas corpus*, and to leave the question of the lawfulness of the detention of the prisoner, in the State in which he was indicted, to be inquired into and determined, in the first instance, by the courts of the State.

A prisoner in custody under authority of a State will not be discharged by a court of the United States by writ of *habeas corpus*, because an indictment against him lacked the words "a true bill," or was found by the grand jury by mistake or misconception; or because a mittimus issued by a justice of the peace, under a statute of the State, upon application of a surety on a recognizance, and affidavit that the principal intended to abscond, does not conform to that statute.

THIS was a petition, filed March 26, 1895, in the Circuit Court of the United States for the District of Connecticut, and addressed to the Honorable William K. Townsend, the District Judge, as a judge of the Circuit Court, for a writ of *habeas corpus* to the sheriff of the county of New Haven in the State of Connecticut. The petition was signed by the petitioner, and verified by his oath, and was as follows.:

"The petition of George E. Whitten respectfully shows to your honor that he is now a prisoner confined in the custody of Charles A. Tomlinson, sheriff of the county of New Haven, in the county jail in the city of New Haven in said county, for a supposed criminal offence, to wit, a crime of murder in the second degree.

"Your petitioner also shows that such confinement is by virtue of a warrant, a copy whereof is in the possession of said sheriff; and your petitioner avers that, to the best of his knowledge, he is not committed or detained by virtue of any process of law known to the courts of the United States or

the several States, but he is now detained in violation of the Constitution of the United States, in violation of the laws of the United States, and in violation of the constitution and laws of the State of Connecticut; and that he is not held in confinement by virtue of any final judgment or decree of any competent court or tribunal of criminal jurisdiction, or by virtue of any process issued upon such judgment or decree, but is held without due process of law.

"And your petitioner further says that at the time of his arrest, and for a long time prior thereto, he was a citizen of Massachusetts, and was extradited from Massachusetts for said alleged crime in January, 1895; and he says that he is advised by his counsel, William H. Baker, residing at Boston, and so believes, that his said imprisonment is illegal, and that said illegality consisted in this, to wit:

"That in August and September, 1893, this petitioner was tried before the local court sitting within and for the county of New Haven, State of Connecticut, upon a charge of murder in the second degree, being the same alleged charge for which he was extradited, and was after a full hearing thereof discharged from said court.

"That thereafterwards this petitioner remained in the city of New Haven, State of Connecticut, for a long time — during at least two sessions of the grand jury — and then removed to Newton in the Commonwealth of Massachusetts, some time early in the year 1894.

"That he was in January, 1895, while such citizen of Massachusetts, arrested and extradited from the State of Massachusetts upon a warrant issued by the Governor of Massachusetts, on demand and application of the Governor of Connecticut, alleging that an indictment had been found by the grand jury against him of murder within and for the county of New Haven, being the same charge on which he was tried as above. This petitioner was taken to the said city of New Haven by virtue thereof.

"This petitioner avers that no indictment was ever found against him by any grand jury sitting at any time within the State of Connecticut, nor no indictment as and for a true bill

ever was presented by any grand jury in said State of Connecticut against him, which he is ready to verify and prove, and any pretended indictment was found by mistake or misconception and was not their true verdict or finding.

"Further, your petitioner says that he was not, at the time of this extradition as aforesaid, a fugitive from justice from said State of Connecticut.

"Wherefore your petitioner prays a writ of *habeas corpus*, to the end that he may be discharged from custody, and be allowed to depart safely from out the State of Connecticut to the Commonwealth of Massachusetts, without interference in any way by the state authorities of the State of Connecticut, without reference to said charge made against him."

On March 27, a writ of *habeas corpus* was issued accordingly by the District Judge, returnable forthwith at a special term of the Circuit Court.

On March 28, the sheriff made his return to the writ, stating, as the cause of the petitioner's detention and imprisonment, that he was committed to the jail by virtue of the following mittimus:

"To the Sheriff of New Haven County, his deputy, or any proper officer or indifferent person, Greeting:

"Whereas Lucius B. Hinman, of New Haven, Conn., did on the 17th day of January, 1895, enter into a recognizance in the sum of five thousand dollars for the appearance of George E. Whitten, of the town of Newton, State of Massachusetts, before the Superior Court to be holden at New Haven within and for the county of New Haven on the first Tuesday of January, 1895, and the said Lucius B. Hinman now believes that said George E. Whitten intends to abscond, and having produced the evidence that he is surety as aforesaid for the said George E. Whitten, and hath applied to me for a mittimus, and hath made oath before me that the statements in his said application are true:

"These are, therefore, by authority of the State of Connecticut, to command you that you forthwith arrest the said George E. Whitten, and him commit to the jail of said New Haven

County; and the keeper of said jail is hereby ordered to receive the said George E. Whitten, and him safely keep within said jail until he be discharged by due order of law. Hereof fail not, but due service and return make.

·"Dated at New Haven this 26th day of March, A.D. 1895.
"JOHN S. FOWLER, Justice of the Peace."

The petitioner moved to quash the return, as insufficient to justify his detention.

The Circuit Court, upon a hearing, denied the motion, and .discharged the writ of *habeas corpus*, without prejudice .to the right of the petitioner to renew the motion; and filed an opinion by the District Judge (67 Fed. Rep. 230) in which the grounds of decision were stated as follows:

"The writ was issued; and the sheriff brought the petitioner into. this court, and made return, as to the cause of his detention and imprisonment, that he was committed to jail by virtue of a mittimus, in the form provided for by statute, duly issued .by a justice of the peace on the application of the .bondsman, upon oath, that the petitioner. intended to abscond. A hearing was had upon a motion to quash the return."

"The petitioner was arrested in Massachusetts, and brought . into this State under a warrant issued by the Governor of Massachusetts, upon the requisition of the Governor of Connecticut, accompanied by a certified copy of the indictment charging the crime, and an affidavit that the petitioner was a fugitive from justice.

"It is claimed, in support of the petition, that the indictment was procured by mistake, and that the prisoner was not in fact a fugitive from justice. These claims are denied by the attorney for the State. In view of the conclusions reached; it is not necessary to pass upon these questions of fact. It may be assumed, in the disposition of this motion, that all the allegations in the petition are true.

"Counsel for the petitioner claims that he can prove, in the first place, that the indictment is invalid or void, by reason of some mistake on the part of the grand jury. But the effect of

an inquiry into this question, assuming such evidence to be admissible and true, would be to call upon the Federal court to examine into the proceedings under which said indictment was obtained, and to determine collaterally its sufficiency under the laws of this State."

"It is further claimed that the petitioner was not a fugitive from justice, and that, inasmuch as extradition proceedings are based upon the statutes of the United States, the question whether he was in fact such fugitive is a Federal question, which it is the duty of this court to decide. But it is not denied that the demand made upon the executive authority of the asylum State, and his action thereon, were proper in form; and it will not be assumed in advance that he has surrendered the petitioner upon insufficient evidence."

"I do not mean to be understood as denying the right to this prisoner, at an appropriate time, to introduce evidence that he was not a fugitive from justice, or that the evidence before the Governor of Massachusetts was insufficient to authorize his action; nor do I intend at this time to pass upon the merits of this or any other questions presented, nor to intimate what disposition might be made of these claims, in case they were brought before this court after final action in the state court. All that is now decided is that it must be assumed in advance that the petitioner may obtain all the protection to which he may be entitled in the courts of this State."

"In view of the principle of right and law, underlying the forbearance which the Federal and state courts exercise towards each other in order to avoid conflict, I should not be justified in passing upon such questions in advance of the proceedings in the state courts."

On April 25, the petitioner filed in the Circuit Court an appeal, reciting the petition, the return, and the motion to quash the return, and concluding as follows:

"The said Circuit Court of the United States for the District of Connecticut, on the twenty-eighth day of March, 1895, made final ruling and decreed that upon the face of the petition, without hearing any evidence to sustain the petition, [and

denying the petitioner the right to introduce any evidence to sustain said petition or tending to sustain it, which the plaintiff duly offered,] the writ should be discharged, and that the motion to quash said return be denied, and it was afterwards so decreed and ordered.

"Wherefore this petitioner appeals from the whole of said decree of said Circuit Court, and the petition, return, motion to quash, decree, writ and all other papers forming a record of said cause may be sent to the Supreme Court of the United States without delay, together with this appeal, and moves that the said Supreme Court will proceed to hear the said cause anew, and that the said decree of the said Circuit Court be reversed, and for such further order and decree to be made as will to the Supreme Court of the United States seem just and right. The petition for the writ of *habeas corpus*, the writ of *habeas corpus*, the return of the sheriff, the motion to quash, and the decree of the court, are hereby made a part of this appeal."

On the same day, that appeal was allowed by the District Judge.

On May 8, the petitioner filed a paper, purporting to amend his appeal by inserting the words above printed in brackets; and with this paper filed the following letter addressed to his counsel by the District Judge:

"United States Courts, Judges' Chambers, New Haven, May 4, 1895.    William H. Baker, Esq., 39 Court Street, Boston, Mass.    Dear Sir: Continuous court engagements night and day for two days have prevented an earlier reply to your letter of April 29th. I had supposed that the record contained a statement of the fact that the court declined to hear the evidence; and, if not, I am willing that the statement of said fact should be inserted in the record, provided it can be properly done at this time.

"Yours truly, WILLIAM K. TOWNSEND."

The record transmitted to this court set forth the matters

above stated; but showed no further order amending the record, or allowing the amendment of the appeal.

*Mr. William H. Baker* for appellant.

*Mr. Edward H. Rogers,* (with whom was *Mr. Tilton E. Doolittle* on the brief,) for appellee.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

By the judicial system of the United States, established by Congress under the power conferred upon it by the Constitution, the jurisdiction of the courts of the several States has not been controlled or interfered with, except so far as necessary to secure the supremacy of the Constitution, laws and treaties of the United States.

With this end, three different methods have been provided by statute for bringing before the courts of the United States proceedings begun in the courts of the States.

First. From the earliest organization of the courts of the United States, final judgments, whether in civil or in criminal cases, rendered by the highest court of a State in which a decision in the case could be had, against a right specially set up or claimed under the Constitution, laws or treaties of the United States, may be reëxamined and reversed or affirmed by this court on writ of error. Acts of September 24, 1789, c. 20, § 25, 1 Stat. 85; February 5, 1867, c. 28, § 2, 14 Stat. 386; Rev. Stat. § 709; *Martin* v. *Hunter,* 1 Wheat. 304; *Cohens* v. *Virginia,* 6 Wheat. 264. Such appellate jurisdiction is expressly limited to cases in which the decision of the state court is against the right claimed under the Constitution, laws or treaties of the United States, because, when the decision of that court is in favor of such a right, no revision by this court is necessary to protect the national government in the exercise of its rightful powers. *Gordon* v. *Caldcleugh,* 3 Cranch, 268; *Montgomery* v. *Hernandez,* 12 Wheat. 129; *Commonwealth Bank* v. *Griffith,* 14 Pet. 56, 58; *Missouri* v. *Andriano,* 138 U. S. 496, 500, 501.

Second. By the Judiciary Act of 1789, the only other way of transferring a case from a state court to a court of the United States was under section 12, by removal into the Circuit Court of the United States, before trial, of civil actions against aliens, or between citizens of different States. 1 Stat. 79. Such right of removal for trial has been regulated, and extended to cases arising under the Constitution, laws or treaties of the United States, by successive acts of Congress, which need not be particularly referred to, inasmuch as the present case is not one of such a removal.

Third. By section 14 of the old Judiciary Act, the courts of the United States were authorized, in general terms, to issue writs of *habeas corpus* and other writs necessary for the exercise of their respective jurisdictions; "provided that writs of *habeas corpus* shall in no case extend to prisoners in jail, unless when they are in custody under or by color of the authority of the United States, or are committed for trial before some court of the same, or are necessary to be brought into court to testify." 1 Stat. 81. Under that act, no writ of *habeas corpus*, except *ad testificandum*, could be issued in the case of a prisoner in jail under commitment by a court or magistrate of a State. *Ex parte Dorr*, 3 How. 103; *In re Burrus*, 136 U. S. 586, 593.

By subsequent acts of Congress, however, the power of the courts of the United States to issue writs of *habeas corpus* of prisoners in jail has been extended to the case of any person in custody for an act done or omitted in pursuance of a law of the United States, or of an order or process of a court or judge thereof; or in custody in violation of the Constitution, or of a law or treaty of the United States; or who, being a subject or citizen of and domiciled in a foreign State, is in custody for an act done or omitted under any right or exemption claimed under a foreign State, and depending upon the law of nations. Acts of March 2, 1833, c. 57, § 7, 4 Stat., 634; August 29, 1842, c. 257, 5 Stat. 539; February 5, 1867, c. 28, § 1, 14 Stat. 385; Rev. Stat. § 753.

By the existing statutes, this court and the Circuit and District Courts, and any justice or judge thereof, have power

to grant writs of *habeas corpus* for the purpose of inquiring into the cause of restraint of liberty of any prisoner in jail, who "is in custody in. violation of the Constitution, or of a law or treaty of the United States;" and "the court or justice or judge, to whom the application is made, shall forthwith award a writ of *habeas corpus*, unless it appears from the petition itself that the party is not entitled thereto;" and "shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice may require." Rev. Stat. §§ 751–755, 761.

The power thus granted to the courts and judges of the United States clearly extends to prisoners held in custody, under the authority of a State, in violation of the Constitution, laws or treaties of the United States. But in the exercise of this power the courts of the United States are not bound to discharge by writ of *habeas corpus* every such prisoner.

The principles which should govern their action in this matter were stated, upon great consideration, in the leading case of *Ex parte Royall*, 117 U. S. 241, and were repeated in one of the most recent cases upon the subject, as follows:

"We cannot suppose that Congress intended to compel those courts, by such means, to draw to themselves, in the first instance, the control of all criminal prosecutions commenced in state courts exercising authority within the same territorial limits, where the accused claims that he is held in custody in violation of the Constitution of the United States. The injunction to hear the case summarily, and thereupon 'to dispose of the party as law and justice require,' does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution." "Where a person is in custody; under process from a state court of origi-

nal jurisdiction, for an alleged offence against the laws of such State, and it is claimed that he is restrained of his liberty in violation of the Constitution of the United States, the Circuit Court has a discretion, whether it will discharge him, upon *habeas corpus,* in advance of his trial in the court in which he is indicted ; that discretion, however, to be subordinated to any special circumstances requiring immediate action. When the state court shall have finally acted upon the case, the Circuit Court has still a discretion whether, under all the circumstances then existing, the accused, if convicted, shall be put to his writ of error from the highest court of the State, or whether it will proceed, by writ of *habeas corpus,* summarily to determine whether the petitioner is restrained of his liberty in violation of the Constitution of the United States." *Ex parte Royall,* 117 U. S. 241, 251–253; *New York* v. *Eno,* 155 U. S. 89, 93–95.

In *Ex parte Royall* and in *New York* v. *Eno,* it was recognized that in cases of urgency, such as those of prisoners in custody, by authority of a State, for an act done or omitted to be done in pursuance of a law of the United States, or of an order or process of a court of the United States, or otherwise involving the authority and operations of the general government, or its relations to foreign nations, the courts of the United States should interpose by writ of *habeas corpus.*

Such an exceptional case was *In re Neagle,* 135 U. S. 1, in which a deputy marshal of the United States, charged under the Constitution and laws of the United States with the duty of guarding and protecting a judge of a court of the United States, and of doing whatever might be necessary for that purpose, even to the taking of human life, was discharged on *habeas corpus* from custody under commitment by a magistrate of a State on a charge of homicide committed in the performance of that duty.

Such also was *In re Loney,* 134 U. S. 372, in which a person arrested by order of a magistrate of a State, for perjury in testimony given in the case of a contested Congressional election, was discharged on *habeas corpus,* because a charge of such perjury was within the exclusive cognizance of the courts of the

United States, and to permit it to be prosecuted in the state courts would greatly impede and embarrass the administration of justice in a national tribunal.

Such, again, was *Wildenhus's case*, 120 U. S. 1, in which the question was decided on *habeas corpus* whether an arrest, under authority of a State, of one of the crew of a foreign merchant vessel, charged with the commission of a crime on board of her while in a port within the State, was contrary to the provisions of a treaty between the United States and the country to which the vessel belonged.

But, except in such peculiar and urgent cases, the courts of the United States will not discharge the prisoner by *habeas corpus* in advance of a final determination of his case in the courts of the State; and, even after such final determination in those courts, will generally leave the petitioner to the usual and orderly course of proceeding by writ of error from this court. *Ex parte Royall*, 117 U. S. 241; *Ex parte Fonda*, 117 U. S. 516; *In re Duncan*, 139 U. S. 449; *In re Wood*, 140 U. S. 278; *In re Jugiro*, 140 U. S. 291; *Cook* v. *Hart*, 146 U. S. 183; *In re Frederich*, 149 U. S. 70; *New York* v. *Eno*, 155 U. S. 89; *Pepke* v. *Cronan*, 155 U. S. 100; *Bergemann* v. *Backer*, 157 U. S. 655.

In a petition for a writ of *habeas corpus*, verified by the oath of the petitioner, as required by section 754 of the Revised Statutes, facts duly alleged may be taken to be true, unless denied by the return, or controlled by other evidence. But no allegation of fact in the petition can be assumed to be admitted, unless distinct and unambiguous.

The facts upon which the lawfulness of the imprisonment of this petitioner depends are obscurely and imperfectly presented in his petition, and in the record transmitted to this court.

The general allegations in the petition, that the petitioner is detained in violation of the Constitution and laws of the United States, and of the constitution and laws of the State of Connecticut, and is held without due process of law, are averments of mere conclusions of law, and not of matters of fact. *Cuddy's case*, 131 U. S. 280, 286.

The petition begins by alleging that the petitioner is a prisoner confined by the sheriff of the county of New Haven in the county jail for a supposed criminal offence, to wit, the crime of murder in the second degree, and that his imprisonment is by virtue of a warrant, a copy whereof is in the possession of the sheriff. It also alleges that the petitioner was a citizen of Massachusetts, and was extradited from that State for said alleged crime in January, 1895. So far, certainly, no unlawful imprisonment is shown.

The allegation that in August and September, 1893, he was tried before a local court in New Haven upon the same charge, and, upon a full hearing, was discharged by the court, would seem to point to a hearing and discharge upon an application for his committal to jail to await prosecution, rather than to a formal trial and acquittal; and, whatever effect it might have, if pleaded to a subsequent indictment, affords no ground for his discharge on *habeas corpus. Ex parte Bigelow*, 113 U. S. 328; *Belt, petitioner*, 159 U. S. 95.

It is then alleged that he remained in New Haven during at least two sessions of the grand jury, and then, early in 1894, removed to Massachusetts; and that in January, 1895, he was arrested in Massachusetts and brought to New Haven upon a warrant of extradition, issued by the Governor of Massachusetts, upon the demand of the Governor of Connecticut, alleging that an indictment for murder had been found against him by the grand jury of the county of New Haven. These allegations are immaterial, except as introductory to the remaining allegations of the petition.

One of these allegations is "that no indictment was ever found against him by any grand jury sitting at any time within the State of Connecticut, nor no indictment as and for a true bill ever was presented by any grand jury in said State of Connecticut against him, which he is ready to verify and prove, and any pretended indictment was found by mistake or misconception, and was not their true verdict or finding."

It is not alleged that it appears by the records of the court that no indictment was presented by the grand jury; and it is by no means clear that it was intended to allege anything

more than that an indictment, actually presented by the grand jury to the court, lacked the words "a true bill," and was found by the grand jury by mistake and misconception. Such matters are proper subjects of inquiry in the courts of the State, but afford no ground for interposition by the courts of the United States by writ of *habeas corpus*. *In re Wood*, 140 U. S. 278; *In re Wilson*, 140 U. S. 575.

The only other allegation in the petition is that the petitioner was not, at the time of his extradition from Massachusetts, a fugitive from the justice of Connecticut.

The record, independently of the opinion of the Circuit Court, does not show what, if any, evidence was introduced at the hearing upon which the writ of *habeas corpus* was discharged and the prisoner left in custody. The case was heard by the Circuit Court, and not by the District Judge at chambers or out of court. Had it been so heard by him, there could have been no appeal to this court from his decision. Rev. Stat. §§ 751, 752, 764; Act of March 3, 1885, c. 353, 23 Stat. 437; *Carper* v. *Fitzgerald*, 121 U. S. 87; *Lambert* v. *Barrett*, 157 U. S. 697. The subsequent correspondence between the District Judge and the petitioner's counsel had no proper place in the record of the court, and it does not appear that the judge intended or expected his letter to be filed or recorded. In that letter he did no more than express his willingness that the record should be amended, provided it could properly be done. It does not appear that the judge afterwards allowed, or was requested to allow, any amendment of the record, or of the appeal; and the petitioner or his counsel could not amend either the record or the appeal by his own act, without leave of the judge.

If, in order to ascertain what was proved, or offered to be proved, at the hearing, we turn to the opinion filed in the court below and sent up with the record, it thereby appears that the petitioner offered to prove that the indictment against him was procured by some mistake of the grand jury, and that he was not in fact a fugitive from justice; and that the judge assumed, for the purpose of the disposition of the writ of *habeas corpus*, that all the allegations of the petition were true.

But if the opinion can be referred to as showing part of what took place at the hearing, it may likewise be referred to as showing other matters then before the court, and especially the proceedings for extradition.

As to those proceedings, the opinion (consistently with the allegations of the petition, so far as anything upon the subject is distinctly and unequivocally alleged therein,) not only states, as uncontroverted facts, that the petitioner was arrested in Massachusetts, and brought into Connecticut, under a warrant of extradition issued by the Governor of Massachusetts, upon a requisition of the Governor of Connecticut, accompanied by a certified copy of the indictment, and by an affidavit that the petitioner was a fugitive from justice; but expressly says that it was not denied that the demand upon the executive authority of Massachusetts, and his action thereon, were proper in form.

A warrant of extradition of the Governor of a State, issued upon the requisition of the Governor of another State, accompanied by a copy of an indictment, is *prima facie* evidence, at least, that the accused had been indicted and was a fugitive from justice; and, when the court in which the indictment was found has jurisdiction of the offence, (which there is nothing in this case to impugn,) is sufficient to make it the duty of the courts of the United States to decline interposition by writ of *habeas corpus*, and to leave the question of the lawfulness of the detention of the prisoner, in the State in which he was indicted, to be inquired into and determined, in the first instance, by the courts of the State, which are empowered and obliged, equally with the courts of the United States, to recognize and uphold the supremacy of the Constitution and laws of the United States. *Robb* v. *Connolly,* 111 U. S. 624; *Ex parte Reggel,* 114 U. S. 642; *Roberts* v. *Reilly,* 116 U. S. 80; *Cook* v. *Hart,* 146 U. S. 183; *Pearce* v. *Texas,* 155 U. S. 311.

The return of the sheriff to the writ of *habeas corpus* does not (as it might well have done) set forth the indictment, and the warrant of extradition, as grounds for the detention of the prisoner. But any defect in the return in this respect affords no

reason why the courts of the United States should take the prisoner out of the custody of the authorities of the State.

The return does show that the petitioner is held in custody by the sheriff by virtue of a mittimus issued to him by a justice of the peace, in accordance with sections 962 and 1613 of the General Statutes of Connecticut of 1887,[1] which authorize the surety on a recognizance, either in civil or in criminal proceedings, upon making affidavit that his principal intends to abscond, to obtain from a justice of the peace a mittimus to commit him to jail.

The only objections taken by the petitioner to the sufficiency of this mittimus are, 1st, that it shows that the recognizance was entered into on the 17th of January, 1895, for his appearance "before the Superior Court to be holden at New Haven within and for the county of New Haven on the first Tuesday of January, 1895," which was a day already passed; and 2d, that it describes him as "of the town of Newton, State of Massachusetts," while the statute only authorizes the issue of a mittimus by "a justice of the peace of the county in which such principal resides." But the first Tuesday of January was the day appointed by law for the beginning of the term of the Superior Court. Conn. Gen. Stat. § 1615. And the question whether the recognizance might be construed as requiring an appearance at a subsequent day in the course of the term,

---

[1] SEC. 962. Any bail or surety who has entered into a recognizance for the personal appearance of another, and shall afterwards believe that his principal intends to abscond, may apply to a justice of the peace in the county in which such principal resides, produce his bail bond, or evidence of his being bail or surety, and verify the reason of his application by oath or otherwise; and thereupon such justice shall forthwith grant a mittimus, directed to a proper officer or indifferent person of such county, commanding him forthwith to arrest such principal, and commit him to the jail of such county; and the keeper of such jail shall receive such principal, and retain him in jail until discharged by due order of law; and such surrender of the principal shall be a full discharge of the surety upon his bond or recognizance.

SEC. 1613. Any surety in a recognizance in criminal proceedings, who believes that his principal intends to abscond, may have the same remedy, and proceed and be discharged in the same manner, as sureties upon bail bonds in civil actions.

as well as the question whether the word "resides," as used in the statute, implies domicil, or only presence in the county, is a question which should be left to the decision of the courts of the State.

There could be no better illustration than this case affords of the wisdom, if not necessity, of the rule, established by the decisions of this court, above cited, that a prisoner in custody under the authority of a State should not, except in a case of peculiar urgency, be discharged by a court or judge of the United States upon a writ of *habeas corpus*, in advance of any proceedings in the courts of the State to test the validity of his arrest and detention. To adopt a different rule would unduly interfere with the exercise of the criminal jurisdiction of the several States, and with the performance by this court of its appropriate duties.

*Order affirmed.*