Ex parte COLLINS.

(Circuit Court, N. D. California. July 22, 1907.)

No. 14,274.

1. HABEAS CORPUS—FEDERAL COURTS—PROCEDURE.

On an application for a writ of habeas corpus presented to a federal court, it is not required to issue the writ instanter, but the court in its discretion may, instead, make an order on the officer alleged to have petitioner in his custody to show cause on a day certain why the writ should not be issued.

2. SAME—DISCRETION—OTHER REMEDIES.

Petitioner, having been extradited, was placed on trial under the extradition indictment, and, having become a witness in his own behalf, after disagreement of the jury, and before the case was finally disposed of, was again indicted for perjury alleged to have been committed on his former trial, and was convicted. He appealed to the state Court of Appeal, and applied to the state Supreme Court for discharge on habeas corpus, challenging the state court's jurisdiction to try him for any other offense than that for which he was extradited, until he had been either convicted and served his sentence and had a reasonable time to return to his asylum country, or had been acquitted and had a like opportunity. This writ was denied, and a writ of error allowed for review by the Supreme Court of the United States. *Held* that, pending the determination of such writ of error, he was not entitled to a discharge on habeas corpus issued out of the federal Circuit Court.

For former opinion, see 149 Fed. 573; opinion of district judge in 151 Fed. 358.

George D. Collins, in pro. per.

Wm. Hoff Cook, Asst. Dist. Atty. of San Francisco, for respondent.

VAN FLEET, District Judge. This is an application to this court by the petitioner, George D. Collins, for the writ of habeas corpus to discharge him from confinement in the county jail of the city and

county of San Francisco, wherein it is alleged he is restrained of his liberty by the sheriff of that municipality contrary to law.

The petition upon which the application is made is unnecessarily long, and contains much matter that has no place in such a pleading. The material facts constituting petitioner's grievance may be briefly stated thus: In October, 1905, petitioner at that time being, as he alleges, a resident of and domiciled in the city of Victoria, Province of British Columbia, was, on the demand and requisition of the United States government, extradited by the Canadian authorities to the United States and brought to the city and county of San Francisco; the extradition being asked and granted solely under and pursuant to the treaty of extradition then existing between the government of the United States and that of Great Britain, and based exclusively upon a certain indictment then being prosecuted by the people of the state of California, theretofore, on the 13th day of July, 1905, found and presented by the grand jury of said city and county of San Francisco, and filed in the superior court thereof, charging petitioner with the crime of perjury, specifically laid as having been committed by him on the 30th day of June, 1905. That upon his removal as aforesaid, under such extradition process, petitioner was, in November following, put upon his trial in the superior court of said city and county, under the indictment; but the jury, failing to reach a verdict, were discharged, and the cause was then set to be again tried at a later date. That before another trial of that cause was had, and while the indictment upon which he had been thus extradited so remained undisposed of, other than as above stated, the grand jury of the city and county of San Francisco returned and presented against petitioner a second indictment, charging him with another and distinct offense than that upon which he had been extradited as aforesaid; that is, with the crime of perjury charged to have been committed by the petitioner on December 12, 1905, while testifying on his own behalf on the trial of the first mentioned indictment. And thereafter, and against the earnest and repeated objection and exception by petitioner taken at every stage of the proceedings, that such action was in violation of petitioner's rights under the treaty of extradition and the Constitution and laws of the United States, and contrary to the principles of international law, the authorities of the state of California forced petitioner against his will and protest to a trial upon said last-mentioned indictment, and petitioner was on such trial convicted and adjudged guilty of the offense therein laid, and sentenced to suffer imprisonment in one of the state prisons. That the indictment and charge upon which petitioner was extradited, as aforesaid, has not up to the present time been again tried or disposed of in any way, but the trial thereof has been repeatedly continued by the people, against petitioner's objection; and it is alleged that the state authorities have adandoned any purpose to bring the same to trial or final disposition. It is alleged that the judgment thus rendered against petitioner under said second indictment, being based upon a charge or offense other than that upon which petitioner was extradited, is wholly void, and affords no legal warrant for petitioner's detention; and that it is solely by the supposed authority of such void judgment that the petitioner is now being detained in said

county jail pending the final execution of said judgment in the course of law. That the said extradition warrant has become functus officio, and said sheriff has no warrant, process, or right to detain petitioner. It is finally alleged that petitioner has applied successively, upon the facts stated, to the superior court, the District Court of Appeal, and the Supreme Court of the state, for his release on habeas corpus, but has on each application been refused relief; and, generally, that petitioner has exhausted the remedies provided by the laws of the state for his release from such unlawful imprisonment.

The sheriff's return denies that the state authorities have abandoned the intention to bring to further trial and final conclusion the charge on which petitioner was extradited, or that the sheriff no longer holds petitioner under the extradition warrant; but alleges that petitioner is detained and held both under the warrant of extradition and by authority of the judgment mentioned in the petition; copies of the warrant and judgment and of certain other papers, which I do not regard as having the nature of process, and as therefore immaterial for that purpose, being attached to the return. The return also sets up the fact that upon a similar application by petitioner to the Supreme Court of the state, upon the same facts alleged in the present petition, that court refused to discharge the petitioner, and therein, on May 22, 1907, filed an opinion holding adversely to petitioner's contentions here, a copy of which is attached to the return; and that subsequently the petitioner applied to the Chief Justice of the state in that case for a writ of error to review such judgment in the Supreme Court of the United States, which writ was on June 12, 1907, allowed. It also appears from the return that petitioner has taken an appeal from the said judgment to the state District Court of Appeal.

There was a traverse filed by petitioner, but as it raises no issues that I deem material, it need not be further noticed at this time.

1. Preliminarily, petitioner has raised a question of procedure which will be first disposed of. On the filing of the petition, the court, instead of granting the writ, adopted a course heretofore on several similar applications pursued in this court, and made an order upon the officer alleged to have the petitioner in his custody to show cause on a day certain why the writ should not issue, and it was in response to this rule that the sheriff's return was made. At the hearing the petitioner objected to the filing of the return, or its consideration by the court, upon the ground that the procedure followed was not one authorized under the law; that the provisions of the Revised Statutes as to habeas corpus give no discretion to the court or judge to whom application is made, but to issue the writ at once, upon a consideration of the face of the petition alone.

In putting this very narrow and literal construction upon the statute, the petitioner has fallen into error, arising, no doubt, from a want of familiarity with the cases in which its provisions have been under consideration. Notwithstanding its somewhat peremptory language, it has been repeatedly held that it does not require an issuance of the writ instanter, upon application; but that the court has a reasonable discretion as to the time and mode it will adopt to determine in any instance if it be a proper one for the granting of the writ; and if the

court can ascertain from the facts as they really exist that the granting of the writ will be a futile thing because the petitioner would eventually be remanded, then the issuance of the writ may be dispensed with. And not only may this inquiry be made from the petition, but the very mode adopted in this instance may be employed to lay the facts before the court. Ex parte Milligan, 71 U. S. 2, 110, 18 L. Ed. 281; Ex parte Royall, 117 U. S. 241, 250, 6 Sup. Ct. 734, 29 L. Ed. 868; Minnesota v. Brundage, 180 U. S. 499, 21 Sup. Ct. 455, 45 L. Ed. 639; Whitten v. Tomlinson, 160 U. S. 231, 16 Sup. Ct. 297, 40 L. Ed. 406; Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. 152, 28 L. Ed. 274.

In Ex parte Milligan, it is said:

"It is true that it is usual for a court, on application for a writ of habeas corpus, to issue the writ, and, on the return, to dispose of the case; but the court can elect to waive the issuing of the writ and consider whether, upon the facts presented in the petition, the prisoner, if brought before it, could be discharged. One of the very points on which the case of Tobias Watkins, reported in 3 Pet. 193, 7 L. Ed. 650, turned, was whether, if the writ was issued, the petitioner would be remanded upon the case which he had made. The Chief Justice, in delivering the opinion of the court, said: 'The cause of imprisonment is shown as fully by the petitioner as it could appear on the return of the writ. Consequently, the writ ought not to be awarded if the court is satisfied that the prisoner would be remanded to prison.'"

In Ex parte Yarbrough, the same procedure was adopted as in this instance, by issuing a rule upon the officer to show cause; and, speaking of that method of bringing the facts before it, the Supreme Court say (page 653 of 110 U. S., page 152 of 4 Sup. Ct., 28 L. Ed. 274):

"As this return is precisely the same that the superintendent would make if the writ of habeas corpus had been served on him, the court here can determine the right of the prisoners to be released on this rule to show cause, as correctly and with more convenience in the administration of justice, than if the prisoners were present under the writ in the custody of the superintendent, and such is the practice of this court."

The jurisdiction of that court on habeas corpus is not different in this respect, under the statute, from that conferred upon this court, and these cases leave no doubt upon my mind as to the propriety of the course here pursued to lay the facts before the court.

2. On the merits of his application, the petitioner's main proposition, and which he has argued with great force and ability, is that it was not competent for the state authorities to put him upon trial for an offense other than that upon which he was extradited, during the pendency of that charge, nor until it had finally been disposed of, either by his conviction thereon, or a dismissal thereof, and he thereafter afforded a reasonable opportunity to return to the country of asylum from whence he was removed; that this is true not only from the express language of the treaty of extradition under which he was returned, but of section 5275 of the Revised Statutes, which must be considered in connection therewith, and is in accord with the principles of international law relating to the subject; that these principles apply alike whether the second offense be one committed subsequent to extradition or one committed before that fact, since neither the treaty nor the statute make any distinction in that respect. But it is contend-

ed that in this instance the offense of which petitioner has been convicted cannot be regarded in legal contemplation as having been committed subsequent to his extradition, since he urges "extradition" means the entire case or transaction, from the time of its initiation by the demand or requisition upon the foreign state down to and including the final determination of the extradition case in the courts of the country making the demand; and therefore that this second offense, having been committed before his extradition was a completed thing, is in law to be regarded as an act done prior thereto and so within the principles conceded by all the cases and all writers on international law, which protect him against prosecution therefor at this time. And, finally, it is contended by petitioner that, upon the facts presented, he is entitled at the hands of this court, as of right, and not merely as a matter of discretion, to the writ of habeas corpus for his release; and that he need not pursue the remedy of a writ of error to the state court. In other words, that it is not alone the right of this court, but its duty, which it may not competently ignore, to take the case from the cognizance of the state tribunals and set the petitioner at liberty.

In response to these contentions, the district attorney has contented himself with calling the court's attention to the decision of the Supreme Court of California referred to in the return. An examination of that case shows that that was an application for petitioner's release on habeas corpus upon substantially the same facts as those presented here, and that petitioner indulged very largely in the same course of reasoning before that court as has been urged by him here. The opinion is exhaustive and goes very fully into the questions presented with great thoroughness and consideration; but, without repeating the argument by which the court reached its conclusion, it is sufficient to say that its judgment was adverse to the petitioner's contention; the court, with the concurrence of all the justices, holding that the offense of which petitioner was convicted was one committed subsequently to his removal to the United States, and as such was not within the protection of the treaty of extradition with Great Britain nor the provisions of the Revised Statutes invoked by petitioner; and that it was competent for the state, under the circumstances, to proceed with the prosecution of such subsequent offense, notwithstanding the extradition charge remained undetermined in its courts. The reasoning of the court is very persuasive of the correctness of its conclusion; and, in addition to what is there said, it may be suggested that a construction of the treaty in accordance with the contention of the petitioner would leave the high contracting parties largely powerless to protect their laws against the most flagrant infractions by malefactors brought into the country of either party thereto by extradition. Since, if petitioner is, under the circumstances, protected from prosecution for the offense in question, he would be equally protected as against murder, arson, or treason, or any other in the category of crimes, however heinous; and it is obvious that the mere right to follow him to the country of asylum for further remand, with all the chances of escape, would afford very poor promise of vindication to an offended law. Such a construction, it would seem, should not be indulged

upon any light consideration, nor unless compelled by the most explicit language of the treaty.

However, the question is one of very great importance, and not wholly free from doubt; and I am not disposed to pursue it to a definite conclusion, since, in the view I take, it would not be determinative of the present application. An investigation of the law governing the relations of the courts of the United States with those of the states, as affecting cases of this character, has fully persuaded me that, were I to decide that question in accord with petitioner's contention, I should not be justified, in the present status of the case, in granting the writ.

There is no question as to the power of this court to interfere by habeas corpus, in a proper case, for the relief of one imprisoned under state process in violation of his rights secured by the Constitution of the United States or laws enacted in pursuance thereof, of which a treaty is, by the express terms of the Constitution made one; but petitioner is at fault in his contention that the exercise of that power is in every such instance an imperative duty which the court has not the discretion to refuse. To the contrary, it is only in exceptional instances, of which this case does not afford an example, that a Circuit Court is at liberty, in the exercise of a sound discretion, to interfere with a prosecution in progress in a state court and assume jurisdiction unto itself. Ordinarily, it will not do so until every remedy for relief afforded by the laws of the state has been exhausted by the party whose rights are being transgressed; and even then it has the discretion to leave the party to his remedy by writ of error. These principles are sustained by a large number of cases, of which the following are but a fraction: Whitten v. Tomlinson, 160 U. S. 231, 16 Sup. Ct. 297, 40 L. Ed. 406; New York v. Eno, 155 U. S. 89, 15 Sup. Ct. 30, 39 L. Ed. 80; Minnesota v. Brundage, 180 U. S. 499, 21 Sup. Ct. 455, 45 L. Ed. 639; Baker v. Grice, 169 U. S. 284, 18 Sup. Ct. 323, 42 L. Ed. 748; Robb v. Connolly, 111 U. S. 624, 4 Sup. Ct. 544, 28 L. Ed. 542; U. S. v. Rauscher, 119 U. S. 407, 7 Sup. Ct. 234, 30 L. Ed. 425; Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868.

This rule is founded upon the principle that it is as much the duty of the state courts as it is that of the federal courts to uphold and enforce the Constitution and laws of the United States, by which they are equally bound; and the presumption is that they will do so. Robb v. Connolly, supra.

In Whitten v. Tomlinson, where the right of the federal courts to exercise the power here invoked is perhaps more elaborately discussed than in any of the other cases cited, except Ex parte Royall, in speaking of the character of instances in which those courts should interpose in cases of this impression, it is said (pages 240–242, of 160 U. S., page 301 of 16 Sup. Ct., 40 L. Ed. 406):

"The power thus granted to the courts and judges of the United States clearly extends to prisoners held in custody, under the authority of a state, in violation of the Constitution, laws, or treaties of the United States. But in the exercise of this power the courts of the United States are not bound to discharge by writ of habeas corpus every such prisoner. The principles which should govern their action in this matter were stated, upon great con-

sideration, in the leading case of Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868, and were repeated in one of the most recent cases upon the subject, as follows: 'We cannot suppose that Congress intended to compel those courts, by such means, to draw to themselves, in the first instance, the control of all criminal prosecutions commenced in state courts exercising authority within the same territorial limits, where the accused claims that he is held in custody in violation of the Constitution of the United States. The injunction to hear the case summarily, and thereupon "to dispose of the party as law and justice require," does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the states, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution.' Where. a person is in custody, under process from a state court of original jurisdiction, for an alleged offense against the laws of such state, and it is claimed that he is restrained of his liberty in violation of the Constitution of the United States, the Circuit Court has a discretion, whether it will discharge him, upon habeas corpus, in advance of his trial in the court in which he is indicted; that discretion, however, to be subordinate to any special circumstances requiring immediate action. When the state court shall have finally acted upon the case, the Circuit Court has still a discretion whether, under all the circumstances then existing, the accused, if convicted, shall be put to his writ of error from the highest court of the state, or whether it will proceed, by writ of habeas corpus, summarily to determine whether the petitioner is restrained of his liberty in violation of the Constitution of the United States.' Ex parte Royall, 117 U. S. 241, 251–253, 6 Sup. Ct. 734, 29 L. Ed. 868; New York v. Eno, 155 U. S. 89, 93–95, 15 Sup. Ct. 30, 39 L. Ed. 80.

"In ex parte Royall and in New York v. Eno it was recognized that in cases of urgency, such as those of prisoners in custody, by authority of a state, for an act done or omitted to be done in pursuance of a law of the United States, or of an order or process of a court of the United States, or otherwise involving the authority and operations of the general government, or its relations to foreign nations, the courts of the United States should interpose by writ of habeas corpus. Such an exceptional case was In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55, in which a deputy marshal of the United States charged under the Constitution and laws of the United States with the duty of guarding and protecting a judge of a court of the United States. and of doing whatever might be necessary for that purpose, even to the taking of human life, was discharged on habeas corpus from custody under commitment by a magistrate of a state on a charge of homicide committed in the performance of that duty. Such was In re Loney, 134 U. S. 372, 10 Sup. Ct. 584, 33 L. Ed. 949, in which a person arrested by order of a magistrate of a state, for perjury in testimony given in the case of a contested Congressional election, was discharged on habeas corpus, because a charge of such perjury was within the exclusive cognizance of the courts of the United States, and to permit it to be prosecuted in the state courts would greatly impede and embarrass the administration of justice in a national tribunal. Such again, was Wildenhaus' Case, 120 U. S. 1, 7 Sup. Ct. 385, 30 L. Ed. 565, in which the question was decided on habeas corpus whether an arrest, under authority of a state, of one of the crew of a foreign merchant vessel, charged with the commission of a crime on board of her while in a port within the state, was contrary to the provisions of a treaty between the United States and the country to which the vessel belonged. But, except in such peculiar and urgent cases, the courts of the United States will not discharge the prisoner by habeas corpus in advance of a final determination of his case in the courts of the state; and, even after such final determination in those courts, will generally leave the petitioner to the usual and orderly course of proceeding by writ of error from this court."

And in Minnesota v. Brundage, where the Circuit Court had held the state statute under which the petitioner had been convicted void,

as in conflict with the Constitution of the United States, and had discharged the petitioner on habeas corpus before he had exhausted his remedies provided by the state law, the Supreme Court, in reversing the action of the Circuit Court, after referring to the exceptional instances mentioned in Whitten v. Tomlinson, said (pages 503–504 of 180 U. S., page 457 of 21 Sup. Ct., 45 L. Ed. 639):

"The present case does not come within any of the exceptions to the general rule announced in the cases above cited. It is not, in any legal view, one of urgency. The accused does not, in his application, state any reason why he should not be required to bring the question involved in the prosecution against him before a higher court of the state and invoke its power to discharge him if in its judgment he is restrained of his liberty in violation of the Constitution of the United States. It cannot be assumed that the state court will hesitate to enforce any rights secured to him by that instrument, for upon them equally with the courts of the Union rests the duty to maintain the supreme law of the land. Robb v. Connolly, 111 U. S. 624, 637, 4 Sup. Ct. 544, 28 L. Ed. 542. If the state court declined to recognize the federal right specially claimed by the accused, the case could be brought here for review. After observing that the questions of constitutional law arising in this case has been determined in Schollenberger v. Pennsylvania, 171 U. S. 1, 18 Sup. Ct. 757, 43 L. Ed. 49, and Collins v. New Hampshire, 171 U. S. 30, 18 Sup., Ct. 768, 43 L. Ed. 60, adversely to the present contention of the state, and that there was jurisdiction to discharge the petitioner on habeas corpus, the Circuit Court said: 'Even then, for reasons of comity, such power will seldom be exercised by the Circuit Court to discharge a petitioner held under process from a state court, even after conviction by the trial court, unless large interests affecting the business of many or the rights of the public are so involved that serious consequences will follow from the delay which will be caused by the prosecution of a writ of error to a final decision, or unless the question has already been decided by the Supreme Court of the United States, whose decision the state court has disregarded in the proceeding.'"

So, again, in Baker v. Grice, where the Circuit Court had discharged on habeas corpus the petitioner who was charged with the violation of a statute of the state of Texas called the "Anti-Trust Act," holding that the statute was in violation of the Constitution of the United States, the Supreme Court, reversing the action of the Circuit Court, say (pages 290–291 of 169 U. S., page 325 of 18 Sup. Ct., 42 L. Ed. 748):

"The court below had jurisdiction to issue the writ and to decide the questions which were argued before it. Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868; Whitten v. Tomlinson, 160 U. S. 231, 16 Sup. Ct. 297, 40 L. Ed. 406. In the latter case most of the prior authorities are mentioned. From these cases it clearly appears, as the settled and proper procedure, that while Circuit Courts of the United States have jurisdiction, under the circumstances set forth in the foregoing statement, to issue the writ of habeas corpus, yet those courts ought not to exercise that jurisdiction by the discharge of a prisoner unless in cases of peculiar urgency, and that instead of discharging they will leave the prisoner to be dealt with by the courts of the state; that after a final determination of the case by the state court, the federal courts will even then generally leave the petitioner to his remedy by writ of error from this court. The reason for this course is apparent. It is an exceedingly delicate jurisdiction given to the federal courts by which a person under an indictment in a state court and subject to its laws may, by the decision of a single judge of the federal court, upon a writ of habeas corpus, be taken out of the custody of the officers of the state and finally discharged therefrom, and thus a trial by the state courts of an indictment found under the laws of a state be finally prevented. Cases have occurred of so exceptional a nature that this course has been pursued. Such are the cases of In re Loney, 134 U. S. 372, 10 Sup. Ct. 584, 33 L. Ed. 949, and In re Neagle, 135 U.

S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55; but the reasons for the interference of the federal court in each of those cases were extraordinary, and presented what this court regarded as such exceptional facts as to justify the interference of the federal tribunal. Unless this case be of such exceptional nature, we ought not to encourage the interference of the federal court below with the regular course of justice in the state court."

The same rule is recognized and stated in all the other cases cited, including that of U. S. v. Rauscher, most strongly relied upon by petitioner.

Applying the rule declared in these cases, it is at once apparent that this case has not reached a point where interference by this court would be justified. While it is alleged in the petition in general terms that petitioner has exhausted the remedies afforded him by the laws of the state, this is but a legal conclusion, not supported by the facts, as it appeared at the hearing that his appeal from the judgment of which he complains is still pending in the District Court of Appeal of the state undetermined. It was stated by petitioner that the record on this appeal did not present the main question upon which petitioner relies upon this application; but, if this be so, it does not answer the objection, since it may well be that that court may find other grounds upon which the case will have to be reversed, and thus rid the petitioner of the obnoxious judgment.

But, independently of this consideration, it still remains that petitioner has his remedy by writ of error, already granted by the Chief Justice of the state, and which petitioner is at liberty to take out at his pleasure and thus have the judgment of that court in the habeas corpus proceeding reviewed by the Supreme Court of the United States; and, since the case very clearly does not fall within the class of recognized exceptions to the rule as above stated, petitioner should be relegated to that remedy.

For these reasons, the writ must be denied, and the petition dismissed. It is so ordered.