**MANGAOANG v. BOYD.**
**SASIEFF v. BOYD.**
Nos. 12757, 12758.

United States Court of Appeals
Ninth Circuit.
Dec. 27, 1950.

John Caughlan, Seattle, Wash. (Fred Schlick and C. T. Hatten, Seattle, Wash., of counsel), for appellants.

J. Charles Dennis, U. S. Atty., Seattle, Wash., John P. Boyd, Jr., Sp. Asst. to Atty. Gen., John E. Belcher, Asst. U. S. Atty., Seattle, Wash., for appellee.

Before STEPHENS, HEALY and BONE, Circuit Judges.

STEPHENS, Circuit Judge.

The two appeals from the United States District Court for the Western District of Washington which are treated in this opinion were orally argued to us at the same

session of court in which four similar appeals from the United States District Court for the Southern District of California were argued to us. We decided the California cases on the 16th day of December, 1950, and on that date filed our opinion in one of them, namely Carlson v. Landon, 9 Cir., 186 F.2d 183. The facts, the issues, the applicable law, and our reasoning as to applicable principles recited in that opinion apply largely to the instant or Washington cases. The two groups of proceedings were treated somewhat differently by the two trial courts which heard them, requiring different treatment by us. We here make general reference to the Carlson opinion and as we proceed will quote therefrom.

## Mangaoang

Petitioner Mangaoang has been a resident of the United States since 1926; was arrested on a warrant dated June 28, 1949, issued by John P. Boyd, District Director of the Immigration and Naturalization Service, upon authority of the Attorney General of the United States, on August 1, 1949, charging him under the Immigration and Naturalization Act as it was prior to its amendment by the Internal Security Act of 1950, ch. 1024, Pub.Law 831, with being subject to deportation as an alien who after entry was a member of an organization which advocated the overthrow by force and violence of the government of the United States. He was released the following day upon giving bail in the sum of $5000. On the 17th day of November, 1949, petitioner was rearrested upon the same warrant for the purpose of presenting the Director's request to the court that petitioner's bond be increased from $5000 to $10,-000, and on November 28, 1949, he was released by order of the court in habeas corpus proceedings upon giving bail in the sum of $5000. Ex parte Mangaoang, D.C., 87 F.Supp. 932. On the day of his release petitioner was again arrested upon a warrant issued by the Director in which he was charged this time, and for the first time, under the Internal Security Act of 1950, Pub.Law 831, as follows: " * * * in that he was, after entry, a member of the following class set forth in Section 2(C)

of said Act [8 U.S.C.A. § 137(2) (C)]: Aliens who were members of and affiliated with the Communist Party of the United States; and Section 2(F) of said Act; Aliens who advocate and teach and who were members of and affiliated with an organization that advocates and teaches the overthrow by force and violence of the government of the United States; and Section 2(H) of said Act; Aliens who were members of and affiliated with an organization that writes, circulates, distributes, prints, publishes and displays and causes to be written, circulated, distributed, printed, published, and displayed, and that has in its possession for the purpose of circulation, distribution, publication, issue, and display, written or printed matter of the character described in sub-paragraph [G], to-wit: Printed matter advocating the overthrow by force and violence and other unconstitutional means of the Government of the United States, and the economic, international, and governmental doctrines of world communism."

Release from custody on bail pending hearing of the deportation proceedings has been denied petitioner from the moment of the arrest upon the 1950 warrant, and the petition for the issuance of the writ of habeas corpus was filed, issue was joined, a hearing was had and the court denied relief to petitioner.

## Sasieff

In an agreed statement it is said that this petitioner, Sasieff, submitted his case upon all of the evidence introduced in the Mangaoang proceedings. However, the affidavits appear to refer solely to Mangaoang proceedings. Petitioner Boris Sasieff was born in Georgia, now a part of Russia, and presently resides in Seattle, Washington, where he is employed as part-owner of a bookstore. He entered the United States in October, 1914, and has resided therein ever since. In September, 1948, he was arrested in Seattle, Washington, upon a warrant issued in June of that year charging him with being an alien subject to deportation as one who after entry was a member of an organization which advocated the overthrow by force and violence of

the government of the United States. He was released under a $500 bail bond. He was rearrested in October, 1950, on the same warrant; and on the same date was again arrested under a warrant issued pursuant to the Internal Security Act of 1950 charging him exactly as petitioner Mangaoang was charged under the same Act. He is being held by the District Director of the Immigration and Naturalization Service without bail. There have been hearing sessions under the 1948 warrant but no proposed findings of fact, conclusions of law or order has been completed. There was evidence given at the hearings which would support a finding that petitioner had been a member of the Communist Party of the United States some time between 1935 and 1942.

■ In the first place, the District Director, as did the District Director in the Carlson case, claims that the Internal Security Act of 1950 changed the law as to bail. Upon this point we adopt and quote from the Carlson opinion, as follows:

"It is provided by the Internal Security Act of 1950, under which the 1950 warrant was issued, in Section 23 that: 'Pending final determination * * *, such alien may, in the discretion of the Attorney General (1) be continued in custody; or (2) be released under bond * * *.' Correctly, as we hold, the court decided that this provision does not give the Attorney General or the Director absolute and final power to deny bail. Instead, the court held that the language quoted was but a clarification of language in Section 156, Title 8 U.S.C.A., of which it was amendatory, and left bail to the discretion of the Attorney General rather than to his unlimited power to deny it, and cited United States ex rel. Zapp v. District Director of Immigration and Naturalization, 2 Cir., 1941, 120 F.2d 762, and United States ex rel. Potash v. District Director of Immigration and Naturalization, 2 Cir., 1948, 169 F.2d 747.[1] These cases were decided under the section before the 1950 amendment and held that the Attorney General's discretion was not absolute but could be reviewed as to its reasonableness.

"We agree. And we add, the very fact that the Attorney General (or his assistants) has the power to grant bail before a deportation hearing or refuse it, carries with it the necessity of exercising discretion and certainly discretion must be based upon some phase of fact."

■ The trial judge in the instant proceedings in effect applied the same principles but in the Carlson case petitioner refused to proffer evidence upon his claim that the Director had abused his discretion in denying him bail, while in the instant cases petitioners introduced affidavits and the Director introduced his affidavit and a message from the Assistant Commissioner of Immigration and Naturalization bearing upon that issue. We shall hereinafter make detailed mention of such evidence. We deem it advisable at this juncture to mention the rule that the undenied allegations of the pleadings are to be taken as true. In re Smith, 1904, 143 Cal. 368, 77 P. 180; Daly v. Elton, 1904, 195 U.S. 242, 25 S.Ct. 22, 49 L.Ed. 177; Whitten v. Tomlinson, 1895, 160 U.S. 231, 16 S.Ct. 297, 40 L.Ed. 406. See § 124, pages 235, 236, Vol. 25, American Jurisprudence.

■ We said in the Carlson case and we adopt it in these proceedings: "It is well settled that there is no absolute right of an alien to be accorded bail after the service of a warrant for deportation and it is equally well settled that there is no

"1. It is said in United States ex rel. Potash v. Dist. Dir., 1948, 2 Cir., 169 F.2d 747, at page 751: "The foregoing decisions and also, as it seems to us, the general spirit of our institutions make it improbable that Congress intended to give the Attorney General unlimited power over the admission to bail of aliens against whom deportation proceedings are brought. We think that it requires more than the general grant of power to fix bail in Section 156 to exempt the Attorney General from all control in the exercise of that function even if he should be shown to have acted in an arbitrary manner. This interpretation is particularly indicated in such a situation as the present where personal liberty is involved and there has been no determination that the alien is deportable."

absolute right of an alien to remain in this country. At the same time it is not claimed in this case, as the law now stands, that a legally admitted alien can be deprived of his liberty without good cause therefor as measured by the applicable law or that he can be deported without due process of law. Under statute and warrant of authorization, designated United States immigration officers may intercept individual aliens and subject them to hearings for the purpose of determining whether they are deportable and restrain them of their liberties for enforced deportation after hearing, but detention for long and unreasonable periods before hearing is illegal. There is an admirable collection of authorities upon most if not all of these fundamental points in Skeffington, Immigration Com'r v. Katzeff, 1 Cir., 1922, 277 F. 129."

We think and hold that there is no arguable question as to the validity of the Internal Security Act of 1950 as it is applied to these proceedings. See § 116 of the Act, 50 U.S.C.A. § 811 note, as to separability of the several provisions thereof.

We made extended comment in the Carlson case upon the background of the Internal Security Act of 1950 and quoted at length from that law. The quotation of but three paragraphs of the law will suffice to show the basic reason for its enactment:

"(13) There are, under our present immigration laws, numerous aliens who have been found to be deportable, many of whom are in the subversive, criminal, or immoral classes who are free to roam the country at will without supervision or control.

"(14) One device for infiltration by Communists is by procuring naturalization for disloyal aliens who use their citizenship as a badge for admission into the fabric of our society.

"(15) The Communist movement in the United States is an organization numbering thousands of adherents, rigidly and ruthlessly disciplined. Awaiting and seeking to advance a moment when * * * overthrow of the Government of the United States by force and violence may seem possible of achievement, it seeks converts far and wide by an extensive system of schooling and indoctrination. * * *" 50 U.S.C.A. § 781(12–15).

In the classical habeas corpus proceeding the petitioner is held upon a warrant of commitment issued by a tribunal after a hearing. The petitioner, informed as to the facts shown at the hearing, asks the court to compel their revelation in the Return to the Petition. With the basis of the retention revealed, it becomes the duty of petitioner to introduce evidence to support his claim as to its illegality. It is highly important to notice that the instant proceedings do not have the background in which the basis for the detention must be shown. The Director (under advice of the Attorney General) upon his own motion and upon his own undisclosed reasons decided the discretionary point at issue in these cases. At once it is apparent that the rule requiring petitioner to go forward with his proof in these circumstances throws an impossible burden upon him for he cannot well negative every possible combination of circumstances which might have convinced the Director that he is not a safe risk to be bailed. There could be no more appropriate situation for the application of the rule that the burden of showing a fact falls upon the one who has peculiar knowledge thereof. Of course, the Director knows what facts motivated his decision to deny bail to these petitioners. Since they are not shown in the Return they should be shown by evidence at the hearing.

And it must be understood that the Director is not required to prove the correctness of his conclusion, all he must do is to assert some specific fact which reasonably could be the basis for his action. The required showing, we would say, would be analogous to the showing required in a preliminary hearing before a magistrate as to whether one charged with crime shall be bound over for trial.

The evidence upon which the district court decided these proceedings against petitioners includes, with other evidence hereinafter mentioned, undenied and unrefuted parts of the petitions and of petitioners' answers to the Director's Returns, wherein

petitioners assert their good moral character, their gainful and useful employment, and that they have attended all hearings related to the charges except as to those from which they have been excused by the hearing board.

Mangaoang supports his contentions through three affidavits in addition to the above. Each goes to his substantiality, and one by his attorney is in part as follows and the quoted part is not denied: "* * * he has been informed by officers of the service that the organization referred to both in the warrant of June 28, 1949, and the warrant of October 27, 1950, is the Communist Party, and that alleged membership in the Communist Party at some time since the entry of petitioner into the United States is the sole ground upon which his deportation is sought under both warrants, and that the service does not intend to introduce any evidence in the deportation hearings to prove that petitioner is now a member of the Communist Party, or that he has been a member of that party at any time within at least five years prior to the date of the issuance of the warrant of June 28, 1949. The same evidence will be used by the service to support the charges of the October 27, 1950, warrant, as was used to support the charges of the June 28, 1949, warrant. The arrest and detention of petitioner is not because of any acts or course of conduct of petitioner immediately prior to said arrest on October 22, 1950, or any acts, or course of conduct of petitioner at the time of or prior to such arrest and detention, which are in any way different from the acts done, or course of conduct pursued by petitioner at the time of or after his first arrest on August 1, 1949, and his release on bond which was authorized at that time. No evidence has been adduced at any hearing on any warrant or charge that petitioner now is, or ever has been, a member of the Communist Party."

The Director filed an affidavit in which he states that the hearing can be concluded within two weeks from the date of setting, that delays have been caused because of the decision in Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, which requires that deportation proceedings shall be held under the provisions of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. The Director's affidavit included the following: "* * * Petitioner was taken into custody on October 22, 1950, as a result of a telegraphic directive from the Assistant Commissioner for Enforcement, of the service. This action was taken only after the cases had been examined in the light of the Internal Security Act of 1950, and the spirit and intention thereof, and all factors concerning the likelihood of their deportability and the activities of said aliens. Consideration was also given to the factors of undue hardship which continued detention might impose. * * *"

The following message from the Assistant Commissioner of Immigration and Naturalization was introduced on behalf of the Director: "For your information and that of the United States Attorneys and aliens and their attorneys the instruction to you of October 21st to take into custody and detain alien communists was issued only after the cases had been examined in the light of the Internal Security Act of 1950 and the spirit and intention thereof and all factors concerning the likelihood of the deportability and the activities of said aliens had been given careful consideration as well as factors of undue hardship which continued detention might impose. As you have already been instructed the hearings and steps toward disposition of these cases are to be given top priority. Also you have been advised these aliens were ordered detained by authority of the Attorney General delegated to me by section 90.1 of Title 8 CFR (12 FR 5072, July 31, 1947) under section 37 of the Alien Registration Act of 1940, 8 U.S.C. 458 [8 U.S.C.A. § 458]."

In all of the referred to evidence there is not a word as to any specific fact taken into account in the decision that petitioners are not entitled to bail unless such may be found in the Director's affidavit and the quoted message to the effect that the hearings will be prompt and not long drawn out. But we think such evidence does not satisfy the requirement that the denial of bail must be based upon some specific fact pointing to the petitioners as bad risks to enlargement on bail.

It is perfectly evident that the district court's judgments in dismissing the petitions were based upon the error of law that proof of consideration of the facts relating to an alien under arrest was all that the situation required and that the Director was under no duty of revealing any of such facts. It follows that the judgments must be reversed and remanded and we make the following order:

The judgments are reversed and the causes are remanded with direction to the district court to take the undenied material allegations of the pleadings as true and to give the Director an opportunity to reveal reasons for exercising his discretion, if he did exercise discretion in denying bail, and to take note of facts relating to delays in the deportation hearings, and decide the issues upon such evidence and any other proper evidence which may be offered and received, all in conformity with this opinion.[1,2]

Reversed and remanded.

1. In each of these proceedings an attorney was the petitioner for the person held in custody without bail. Throughout the proceedings the persons in custody are referred to as petitioners and we have continued to do so.

2. It is stated in the Director's Supplemental Brief that the proceedings as to Sasieff are moot because Sasieff has been released on bail. In open court the United States Attorney acting as the Director's attorney denied that the. case is moot. We have no record indicating that Sasieff is free on bail. If he is free on bail, the trial court to which the cases are remanded will adequately handle the matter.