## In re HUTTMAN.

(District Court, D. Kansas, Second Division. November 1, 1895.)

1. INTERNAL REVENUE—REGULATIONS PRESCRIBED BY COMMISSIONER.
   Regulations made by the commissioner pursuant to the statutory authority, with the approval of the secretary of the treasury, in respect to the assessment and collection of internal revenue, have the force of statutes; and the acts of the commissioner are presumed to be the acts of the secretary.

2. SAME—OFFICE RECORDS—PRIVILEGED COMMUNICATIONS—DEPUTY COLLECTOR AS WITNESS.
   A deputy collector of internal revenue cannot be compelled to testify, in a criminal proceeding in a state court, as to statements made to him by an applicant for a special retail liquor dealer's tax stamp, which statements were made for the purpose of being reduced to writing and embodied in the records of the internal revenue office. To divulge such statements would be to divulge the contents of the records themselves, which is forbidden by the internal revenue regulations.

3. HABEAS CORPUS—JURISDICTION OF FEDERAL COURTS.

The federal courts have jurisdiction, under Rev. St. § 753, to issue the writ for the purpose of releasing a deputy revenue collector from imprisonment for alleged contempt of a state court in refusing to testify to the contents of the records of the internal revenue office.

This was an application by Henry Huttman for a writ of habeas corpus. The petition was as follows:

"Your petitioner, Henry Huttman, respectfully represents and shows that he is a citizen of Sedgwick county, in the state of Kansas, and that he is now unjustly and unlawfully detained in custody by B. F. Royse, sheriff of said Sedgwick county, by virtue of a warrant of commitment issued by the district court of said Sedgwick county, a copy of which is hereto attached, marked 'Exhibit A.' Your petitioner further shows that he is in the employ of the United States as deputy revenue collector of the United States for the Fourth subdivision of the district of Kansas; that on the 14th day of September, 1895, he was by said sheriff served with subpoena duces tecum, issued out of said district court of Sedgwick county, whereby he was commanded to appear in said last-named court on the 18th day of September, 1895, as a witness on behalf of the state in a criminal action then and now pending in said last-named court, entitled 'State of Kansas vs. Davidson,' and to then and there produce and exhibit as evidence the records of the office of the collector of internal revenue for the district of Kansas, so far as the said records might show official transactions between the said collector of internal revenue and his subordinates and the defendant in said criminal action touching an application for a special retail liquor dealer's tax stamp supposed to have been made by said defendant to said collector, or your petitioner, acting for him, and the issuance to said defendant of such special tax stamp by said collector, or your petitioner, acting for him; that your petitioner, as directed by said subpoena, personally appeared in said district court of Sedgwick county on the 18th day of September, 1895, and was sworn as a witness on behalf of the state in said criminal action, and was interrogated by the attorney for the state touching the foregoing records from the office of the collector of internal revenue for the district of Kansas; that thereupon the attorney of the United States for the district of Kansas (being requested so to do by the commissioner of internal revenue) moved in said state court to quash said subpoena duces tecum so far as it required or commanded the production and exhibition of said records as evidence in said criminal action, which said motion to quash was by said state court, on the 19th day of September, 1895, granted and sustained; that thereafter your petitioner was required by said state court, under said subpoena, to be and remain in attendance on its sessions as a witness in said criminal case, and on the 20th and 21st days of September, 1895, was called and sworn as a witness therein on behalf of the state; that on this 23d day of September your petitioner was interrogated, and asked to state what, if any, statements or communications had been made by the defendant in said criminal case to your petitioner touching an application alleged to have been made by said defendant to your petitioner (acting for said collector of internal revenue) for a retail liquor dealer's special tax stamp; and that your petitioner replied to such questions, in substance and effect, that said defendant had made no statements or communications to your petitioner save and except such as were required by law to be and were reduced to writing for the purpose of making such writings a part of the records in the office of said collector of internal revenue; and that all oral statements made by the defendant to your petitioner were made to him in his official capacity, aforesaid, for the purpose of reducing them to writing. And your petitioner further shows that he also stated to said state court, in substance, that all such statements were extorted from said defendant by law, for revenue purposes alone; that the information so obtained was privileged; that said records are required to be kept in the office of said collector; that your petitioner had no authority to produce them in said state court; that such production would interfere with the

performance of his duties by said collector, and tend to defeat the government in the collection of its revenues; that all statements which might be made by your petitioner would be statements of the contents of said records; and that your petitioner, for the foregoing reasons, and because he was so instructed by the commissioner of internal revenue, by official regulation made conformably to law, respectfully declined to answer said interrogatories. And your petitioner further shows that upon his so declining to answer said questions, and solely by reason thereof, the said district court ordered your petitioner committed for contempt of said state court, and until he did answer such questions; and that, therefore, the commitment hereinbefore described was issued and served, and that solely by reason thereof your petitioner is now held in custody and deprived of his liberty by said B. F. Royse, sheriff of said Sedgwick county, Kansas. And your petitioner further shows that he has not declined to testify, in obedience to said subpœna, as to any fact within his knowledge other than as aforesaid, but has simply declined to testify as to the contents of the records of the office of collector of internal revenue for the district of Kansas, and as to statements made to him as hereinbefore set forth, and that neither the contents of said records nor said statements are proper evidence in said state court; and said state court cannot lawfully compel the contents of said records to be disclosed, nor lawfully compel your petitioner to divulge said statements. Wherefore, to be relieved of said unlawful detention and imprisonment, your petitioner prays that a writ of habeas corpus, to be directed to said B. F. Royse, sheriff of Sedgwick county, Kansas, may issue in this behalf, so that your petitioner may be forthwith brought before this court to do, submit to, and receive what the law may direct."

W. C. Perry, for petitioner.

WILLIAMS, District Judge.    There is no question upon which this court is more careful than the question of interference with the powers of state courts in any state in which the present judge of this court exercises jurisdiction.    I am ever careful in exercising the authority of the United States when it in any manner conflicts with the state courts.    But whenever I am called upon to administer the laws of the United States, I am compelled to enforce those laws, whether they conflict with any law of the state or not.    This is a question arising upon or under the revenue laws of the United States.    If the general government has power to do anything, it has the power to pass laws in relation to the raising of revenue for the support of the government.    This authority is supreme.    It is especially dedicated to the general government by the constitution. The states have no right to hinder or obstruct the exercise of this authority.    In this case it seems that an officer of the government, acting in conformity with or under the revenue laws of the United States, was called upon to testify in a state court with reference to something that transpired in his office between him and a citizen in relation to the enforcement of the revenue laws.    Congress has given to the commissioner of internal revenue, without qualification, the power to make and enforce upon his subordinate officers all reasonable regulations in the matter of the collection of internal revenue.    These regulations are not to be questioned by this court, but must be upheld and enforced, and they must be regarded by all as having the same force as an act of congress.    As before stated, the commissioner of internal revenue, with the approval of the secretary of the treasury, by statute is given the power to make such

regulations as he deems necessary in the matter of the assessment and collection of internal revenue. It has been frequently decided that such regulations have the force of statutes. U. S. v. Eliason, 16 Pet. 291; Gratiot v. U. S., 4 How. 80; Alvord v. U. S., 95 U. S. 356; Ex parte Reed, 100 U. S. 13. And the acts of the commissioner in matters relating to the revenue are presumed to be the acts of the secretary. Parish v. U. S., 100 U. S. 500. I suppose it would be contempt of the court if there was an act of congress specifically stating that the revenue officers who carry out and enforce the revenue laws of the United States should be compelled to bring the records of their offices, or the information from which such records are made, into any court, and they should refuse to do so. On the other hand, if there was an act of congress that they should not divulge anything that is said between them and a citizen with reference to an application for a special tax stamp as a retail dealer,—I say if there was an act of congress that they should not divulge anything that transpired between a citizen and a revenue collector in his official capacity in regard to a retail dealer's special tax stamp, then the force of such a statute would not be questioned. This simply illustrates the force of the regulation, admittedly in force in this case, forbidding the petitioner from doing what the state court committed him to jail for not doing. But without these regulations it seems very clear to this court that the officers of the government, in the exercise of their duties in carrying out and enforcing the law of the United States, must not be interfered with by any other tribunal or any other power.

It is claimed by the assistant attorney general of the state of Kansas that the question here does not involve the production of the records of the internal revenue office; but the questions which were asked the deputy collector, if answered, would have required him to divulge communications made to him by an applicant for a special tax stamp, with the express and understood purpose of making the record itself. It is stated in the petition that all conversations between the petitioner and the defendant which were required to be divulged in the state court were made with the purpose of embodying them in the records of the internal revenue office, and to divulge such conversations would be to divulge the contents of the records that were made up in the enforcement of the revenue laws of the United States. If the records cannot be produced, how can the conversation and actions of the parties which led up to the making of such records be produced? The distinguished judge of the state court, on motion of the United States attorney, quashed so much of the subpœna duces tecum served on the petitioner as required him to produce the records of his office; but when the witness was asked questions the answers to which required him to tell what such records contained, the state court, on his refusal to answer such questions, ordered him committed for contempt. It is impossible to distinguish between the two propositions, and I am of the opinion that the petitioner was right in declining to answer the questions. I base this opinion, not on any mere rule as to primary or secondary evidence, but because that which cannot be done directly in this re-

spect cannot be done indirectly. If the regulations of the commissioner of internal revenue forbidding the disclosure of the contents of the records in the offices of the various collectors of internal revenue are to be enforced, it is necessary, not only to protect the officers from producing the records, but from divulging statements from which such records are made. In my judgment, internal revenue officers are not subject to the orders of the state courts when obedience to such orders would require such officers to disobey the rules and regulations established by the general government. If there should be any question as to which authority, in case of conflict, must prevail, that question is amply set at rest by the exhaustive opinion of Mr. Justice Bradley in Ex parte Siebold, 100 U. S. 371:

"The greatest difficulty in coming to a just conclusion arises from mistaken notions with regard to the relations which subsist between the state and national governments. It seems to be often overlooked that a national constitution has been adopted in this country, establishing a real government therein, operating upon persons and territory and things; and which, moreover, is, or should be, as dear to every American citizen as his state government is. Whenever the true conception of the nature of this government is once conceded, no real difficulty will arise in the just interpretation of its powers. But if we allow ourselves to regard it as a hostile organization, opposed to the proper sovereignty and dignity of the state governments, we shall continue to be vexed with difficulties as to its jurisdiction and authority. No greater jealousy is required to be exercised towards this government in reference to the preservation of our liberties than is proper to be exercised towards the state governments. Its powers are limited in number, and clearly defined; and its action within the scope of those powers is restrained by a sufficiently rigid bill of rights for the protection of its citizens from oppression. The true interest of the people of this country requires that both the national and state governments should be allowed, without jealous interference on either side, to exercise all the powers which respectively belong to them according to a fair and practical construction of the constitution. State rights and the rights of the United States should be equally respected. Both are essential to the preservation of our liberties and the perpetuity of our institutions. But in endeavoring to vindicate the one we should not allow our zeal to nullify or impair the other. * * * This power to enforce its laws and to execute its functions in all places does not derogate from the power of the state to execute its laws at the same time and in the same places. The one does not exclude the other, except where both cannot be executed at the same time. In that case the words of the constitution itself show which is to yield: 'This constitution, and all laws which shall be made in pursuance thereof, * * * shall be the supreme law of the land.' "

It is suggested by counsel for the state that the information sought to be elicited from the petitioner is necessary in the enforcement of the prohibitory liquor law of the state; but assuredly that suggestion, if true, can furnish no ground for changing an absolute rule of law governing an important bureau of the general government. It is not that the United States has any desire to interfere with or prevent the enforcement of any criminal law which the people of the state may see fit to enact. It is simply a question whether, when the officers of the state, in attempting to enforce one of her laws, seek to transgress a statute, or what is tantamount to a statute, of the United States, it is not the duty of the federal courts, on proper application, to see to it that the national law is upheld.

Some question is made as to whether the statute (section 753, Rev. St.) authorizing the issuance of writs of habeas corpus is

broad enough to cover this case. It seems to me that a mere reading of the statute sufficiently answers this question. It expressly says that the writ may issue where the petitioner is in custody for an act done or omitted in pursuance of a law of the United States, or is in custody in violation of the constitution or laws of the United States. Even if the statute did not cover the case, the writ would issue if the state court had no jurisdiction or power to require the petitioner to answer the questions propounded to him. Ex parte Siebold, supra.

My conclusion is that the petitioner should be discharged from the custody of the sheriff, and it is so ordered.