## Ex parte SHOCKLEY.

(District Court, N. D. Ohio, E. D. December 14, 1926.)

### No. 13692.

1. **Courts ⬅489(16)—Naturalization laws give state courts no control over federal officers and agents.**

 Naturalization laws confer on state courts no control over officers and agents of United States.

2. **Aliens ⬅68(3)—Certificate of arrival must be filed with petition for naturalization, and no court, state or federal, can accept substituted evidence (Naturalization Act 1906, § 4 [Comp. St. § 4352]).**

 Provision of Naturalization Act 1906, § 4 (Comp. St. § 4352), that no naturalization petition may be filed unless a certificate from Department of Labor, stating date, place, and manner of alien's arrival in United States, is filed with clerk of court is mandatory and jurisdictional, and no court, state or federal, has power to accept any form of substituted evidence for such certificate, and. on basis thereof, admit alien to citizenship.

3. **Aliens ⬅68(4)—Statutory conditions on right to file naturalization petition or admission to citizenship are mandatory (Naturalization Act 1906, § 4 [Comp. St. § 4352]).**

 All conditions imposed by Naturalization Act 1906, § 4 (Comp. St. § 4352), on right to file naturalization petition or to be admitted to citizenship, are mandatory, and must be observed by courts.

4. **Aliens ⬅68(3)—Power of district director of naturalization to issue certificate of. arrival is strictly limited to proceeding in accordance with advice received in response to telegraphic inquiry (Bureau of Naturalization, rule 5, par. 3, subd. [b]; Naturalization Act 1906, § 4 [Comp. St. § 4352]).**

 Under Naturalization Act 1906, § 4 (Comp. St. § 4352), district director of naturalization, has no power, on his own responsibility, to issue certificate of arrival to alien seeking naturalization, and any power that he has under Bureau of Naturalization, rule 5, par. 3, subd. (b), is strictly limited to issuing certificate in accordance with advice received in response to telegram of inquiry to proper authorities.

5. **Courts ⬅489(16)—State court cannot compel district director of naturalization to issue certificate of arrival against instructions of his superior (Criminal Code, § 76 [Comp. St. § 10244]).**

 State court had no power, by mandamus or otherwise, to require district director of naturalization to issue certificate of arrival to alien against instructions of Chief of Bureau of Naturalization not to issue certificate, and punish him for contempt for refusal to do so, since this requires him to do act not vested in him by law, and to fabricate official document, corrupt or false making of which would be a felony under Criminal Code, § 76 (Comp. St. § 10244).

6. Courts ⊂⊃489(16)—State court cannot control by mandamus official discretion of federal officer or agent in performance of his duties.

State court has no power to control by mandamus official discretion of officer or agent of United States in his performance of duty vested in him by federal law and arrest and punish him for act done or omitted to be done in performance of his duty.

7. Habeas corpus ⊂⊃27—Habeas corpus held proper remedy of district director of naturalization, imprisoned for refusing to obey mandamus order of state court to issue certificate of arrival (Comp. St. §§ 1281, 1289).

Under Rev. St. §§ 753, 761 (Comp. St. §§ 1281, 1289), habeas corpus was proper remedy of district director of naturalization, imprisoned for contempt of court by county sheriff for refusing to obey mandamus order of state court to issue certificate of arrival to petitioner for naturalization against instructions of Chief of Bureau of Naturalization not to issue certificate.

8. Habeas corpus ⊂⊃45(2)—Habeas corpus writ should not issue when petitioner is held by state, except in emergency.

Writ of habeas corpus should not issue by federal court when petitioner is held by state or under its authority, except in cases of emergency.

At Law. Habeas corpus by William T. Shockley, to be directed to Fred Kohler, Sheriff of Cuyahoga County, Ohio. Alternative writ made permanent, and petitioner discharged.

D. C. VanBuren, Asst. U. S. Atty., of Cleveland, Ohio, for petitioner.

WESTENHAVER, District Judge. This petition was filed by William T. Shockley for a writ of habeas corpus, directed to Fred Kohler, sheriff of Cuyahoga county, Ohio, asking petitioner's release from imprisonment. An answer was filed to the alternative writ, disclosing that the petitioner was held under authority of an order of the court of common pleas of Cuyahoga county, committing him as for a contempt for refusing to obey an order of that court. At this hearing, no one appeared for the respondent to support the lawfulness of such order, although the county prosecutor, who appeared and filed the answer, was duly notified. Owing to the nature of the case and the questions of law and fact involved, I proceeded, notwithstanding such default, to hear the case fully, and have given careful consideration to all questions involved in the controversy.

The petitioner is a director of naturalization for the Cleveland district. On May, 1926, there was filed against him in the court of common pleas of Cuyahoga county, by one Mike Sermas, a petition in mandamus. In this petition Sermas represents that he is an alien desiring to become naturalized; that he entered at the port of New York on or about the 4th of January, 1916, on a vessel arriving from Buenos Aires, Argentina; that he had previously applied to the Secretary of Labor, through William T. Shockley, examiner and director of naturalization for the Cleveland district, for the issuance of a certificate of arrival, in order that he might legally file a petition for naturalization; that he had been advised by said Shockley that he was unable to verify the record of his landing, and that no certificate of arrival could be issued to him; and that he further tried to obtain the necessary certificate of arrival by frequent letters addressed to the Secretary of Labor and by personal calls upon said Shockley, but that this certificate of arrival had been refused for the reason that no record of his arrival could be found at the port of entry. The relief prayed for is a writ of mandamus, requiring said Shockley "to consider other competent evidence than that which may be furnished from a failure of the government officials to verify the date of arrival, and proceed to issue a certificate of arrival upon the facts recited by the relator and the evidence in support thereof" tending to show his continuous and legal residence in the United States since 1916. On May 10 a hearing was had and an order entered, finding that the entry of Sermas into this country was legal, that he had complied with all the immigration laws and regulations of the United States in force at the time of his entry, and that he had been a continuous resident of the United States since 1916. It was thereupon ordered that said Shockley issue forthwith to said Sermas a certificate of arrival. Said Shockley having failed or refused to comply with said command, a further order was on May 14, 1926, entered, adjudging him guilty of contempt, and ordering him committed to the county jail until the first order had been complied with.

It was by virtue of these proceedings that said Shockley was committed and was being held by defendant. The inquiry here is whether it was within the power and jurisdiction of the state court to make and enter these orders. In support of this application many considerations are urged, of which the most important may be stated as follows: (1) That certificate of arrival may be lawfully issued to aliens only by the Secretary of Labor or Commissioner of Immigration, and that the power and authority to issue the same are not vested by law in a district director of

naturalization, and hence the order required the petitioner to make and forge a document which, if made and forged by him with a corrupt intent, would be a felony; (2) that certificates of arrival can be issued only by the Secretary of Labor or Commissioner of Immigration when based upon a proper official record required to be made and compiled in a specific manner, and that the law does not authorize or permit the use of substituted evidence in place of such an official record as a basis upon which any one may issue a certificate of arrival such as is required to be filed with a naturalization petition; (3) that a state court is without power or authority by mandamus, order of arrest, or proceeding in contempt, to control the performance by an officer or an agent of the United States of a duty to be exercised in conformity to the laws of the United States and subject him to arrest and punishment because of his failure or refusal to comply with such orders.

The first and third of these contentions are sound. As this conclusion will dispose of this case, no opinion need be expressed as to the second contention. It results that the order of mandamus, as well as the order committing the petitioner for refusing to obey the same, is beyond any jurisdiction vested in a state court, and is absolutely void.

[1, 2] State courts are by the naturalization laws given jurisdiction to receive and hear petitions for naturalization. The naturalization laws confer upon state courts no control over officers and agents of the United States. No naturalization petition may be filed unless at the time of its filing there shall be filed with the clerk of the court a certificate from the Department of Commerce and Labor, stating the date, place, and manner of the alien's arrival in the United States. Section 4, Act June 29, 1906 (Comp. St. § 4352). This requirement is mandatory and jurisdictional. No court has power to accept any form of substituted evidence for the certificate of arrival required by that section. It is beyond the power of a state or federal court to hear evidence and make a finding that an alien has lawfully arrived and is lawfully within the United States and is entitled to a certificate of arrival, and, upon the basis thereof, admit him to citizenship. It was so held in United States v. Ness, 245 U. S. 319, 38 S. Ct. 118, 62 L. Ed. 321. In that case, a certificate of naturalization, granted upon such a hearing and finding, was canceled in a suit brought under section 15 of the same act (Comp. St. § 4374), notwithstanding an examiner of the Bureau of Naturalization was present at the hearing and had protested against the admission and consideration of such evidence, and despite the further fact that the United States had not, as it might have, taken an appeal from the action of the court granting the application. It was thus finally determined that the production and filing of a certificate of arrival is a jurisdictional condition precedent to the right to file a naturalization petition.

[3] Moreover, all of the conditions imposed by said section 4 upon the right to file a naturalization petition or to be admitted to citizenship, are mandatory and must be observed by the courts. As evidencing the inflexible nature and dominating force of these conditions, the decision in United States v. Ginsberg, 243 U. S. 472, 37 S. Ct. 422, 61 L. Ed. 853, is important. It was there held that the requirement of section 9 of said act (Comp. St. § 4368), that every final hearing upon a naturalization petition shall be had in open court, is so far mandatory that a certificate granted in chambers, is illegal and may be canceled. In the opinion it is said, "No alien has the slightest right to naturalization unless all statutory requirements are complied with;" and, further, "An alien who seeks political rights as a member of this nation can rightfully obtain them only upon terms and conditions specified by Congress. Courts are without authority to sanction changes or modifications; their duty is rigidly to enforce the legislative will in respect of a matter so vital to the public welfare." Obviously, therefore, if Mike Sermas did not have or could not get a certificate of arrival issued in the manner and based on the record required by the law, it was not within the power of any court to grant him a dispensation.

The nature of a certificate of arrival and its importance in administering the immigration and naturalization laws, appear in part from the opinion of Mr. Justice Brandeis, in United States v. Ness, supra. All matters pertaining to immigration and naturalization are now under the jurisdiction of the Department of Labor. Such matters are administered by two bureaus. One is known as the Bureau of Immigration, and has charge of the admission of aliens to the United States and of the enforcement of the immigration laws. The other is known as the Bureau of Naturalization, and has charge only of the naturalization and enforcement of the naturalization laws. By section 1, Act June 29, 1906 (Comp. St. § 963), books of record are required to be provided and kept at the various immigration stations, wherein Commissioners of Immigration shall cause a registry to be made in the case of each alien arriving in the United States, of certain detailed in-

formation pertaining to the alien, including the date of his arrival, and, if he enters through a port, the name of the vessel in which he comes. The section further provides that "it shall be the duty of said commissioners of immigration to cause to be granted to such alien a certificate of such registry, with the particulars thereof." Authority is conferred to designate ports and land stations through which alone aliens may lawfully enter the United States. Entry otherwise than through a designated port or station is unlawful. Many classes of persons are not eligible to admission and may be excluded. Other provisions of the same and later acts prescribe in detail how persons in charge of vessels, and officers at stations and ports of entry shall prepare, preserve, and compile the information required to be registered and recorded in said section 1. The evidence before me shows that the records giving this information are transmitted to the Department of Labor and are under the charge and control of the Bureau of Immigration. Whether it is lawful for the Department of Labor or the Bureau of Immigration, or any person, to make and issue a certificate of arrival based upon any evidence other than these official records, is an important question, which need not be decided in this case. It appears from the evidence before me that the Bureau of Immigration at some time in the past did issue or cause to be issued a certificate of arrival based upon substituted evidence, and that this practice was wholly discontinued several years ago because thought not to be in conformity to the law.

[4] The question here is as to the authority of a district director of naturalization to issue on his own responsibility a certificate of arrival based upon such substituted evidence. District directors, as well as others, have been helpful and kind in aiding applicants to procure these certificates of arrival. It would seem that these courtesies have been misconstrued into a belief that aliens have thereby some right not conferred by acts of Congress or not vested in a district examiner. No provision of the act vests the asserted power in a district director. The only regulation promulgated by the Bureau of Naturalization, conferring any power upon district directors with respect to certificates of arrival, is subdivision (b), par. 3, rule 5. It is there provided that district directors may, at the expense of an alien candidate for citizenship, telegraph to the proper authorities for information concerning the time, place, and manner of such alien's arrival, and, upon advices in response to such telegram, to issue or direct the issue of a certificate of arrival to such alien in accordance therewith. The proper authorities referred to in said rule are, no doubt, the Bureau of Immigration, but the limit of the power of the district director is the same no matter what authority is contemplated. That power is strictly limited to issuing a certificate in accordance with the advices received in response to such telegram. Whether this regulation exceeds the power conferred by statute upon the Bureau of Immigration or the Department of Labor need not be considered. It is sufficient to say that a district director has no authority except such as is conferred upon him in response to his telegram, and that the authority thus conferred must be exercised in strict conformity to the instructions therein given. In such event, he may be a properly constituted commissioner of immigration to issue that specific certificate; but, even if he is, he has no greater authority than is expressly conferred in the specific case.

[5] In the instant case, it appears from the averments of Sermas' petition for mandamus, as well as from the testimony before me, that the district director did apply by telegram and otherwise to the proper authorities for information concerning the time and place and manner of such alien's arrival. He did not receive, in response thereto, any authority to issue a certificate of arrival. On the contrary, as appears from the petition for mandamus, as well as from the testimony before me, the response was that Sermas' assertion that he had arrived from Argentina at a certain date, at a certain port, on a certain vessel, could not be verified, and that no certificate of arrival should be issued. It further appears that the district director was repeatedly notified and advised by the Chief of the Bureau of Naturalization not to issue a certificate of arrival. Upon this · showing, there was no authority vested in said Shockley to issue a certificate. If he had done so with a corrupt criminal intent, he would have committed a violation of section 76, Act March 4, 1909 (Comp. St. § 10244), which among other things, provides that, whoever shall falsely make a certificate required by law relating to or providing for the naturalization of aliens, shall be fined not more than $1,000 or imprisoned not more than five years, or both. The order of the state court not only attempted to supervise and control the discretion of an officer or agent of the United States in the performance of his duty vested in him by a law of the United States, it did much more—it ordered him to perform a duty not vested in him by any law. It commanded him

to fabricate an official document, the corrupt and false making of which would have been a felony.

[6] The inquiry presented in this case admits of only one answer. It was not within the power or jurisdiction of the state court to order by mandamus or otherwise that the petitioner should accept substituted evidence and issue a certificate of arrival, or commit him for contempt because of his failure or refusal so to do. Even if the matter were one within his prescribed official duty, the law is plain that a state court has not power to control by mandamus the official discretion of an officer or agent of the United States in his performance of a duty vested in him by a law of the United States and arrest and punish him for an act done or omitted to be done in the performance of his duty. This law has been embodied in a long and unbroken series of cases. In McClung v. Silliman, 6 Wheat. 598, 5 L. Ed. 340, it was held that a state court might not by mandamus compel the registrar of a United States land office to perform an official act. It was held in Re Neagle, 135 U. S. 1, 10 S. Ct. 658, 34 L. Ed. 55, that a deputy United States marshal could not be held for trial in a state court for a homicide committed in the line of his duty in repelling an assault upon Mr. Justice Field of the United States Supreme Court. In Boske v. Comingore, 177 U. S. 459, 20 S. Ct. 701, 44 L. Ed. 846, it was held that a state court might not commit for contempt a United States collector of internal revenue for refusing to produce as a witness documents in his possession pertinent as evidence in a case pending in a state court, when so to do would violate regulations of the Treasury Department commanding him to keep the same confidential. In Ohio v. Thomas, 173 U. S. 276, 19 S. Ct. 453, 43 L. Ed. 699, it was held that the governor of a United States Soldiers' Home might not be arrested and imprisoned for furnishing oleomargarine as food to members of the home, in violation of a state criminal statute. In re Neill, 8 Blatchf. 156, 17 Fed. Cas. 10089, it was held that an army officer could not be arrested and committed for contempt for refusing to produce a military prisoner in response to a writ of habeas corpus issued by a state court. In Ex parte Robinson, 20 Fed. Cas. 11934, it was held that a United States marshal could not be arrested and committed for contempt in refusing to produce and surrender a federal prisoner in response to a writ of habeas corpus issued by a state court. In Ex parte Turner, 24 Fed. Cas. 14246, it was held that a United States marshal and district attorney could not be com-

mitted for contempt for refusing to comply with an order of a state court to produce and surrender records. In re Huttman (D. C.) 70 F. 699, it was held that a United States collector of internal revenue could not be arrested and imprisoned for refusing to divulge information pertaining to a case pending in a state court in violation of a regulation of the Treasury Department requiring that such information should be kept secret. In re Turner (D. C.) 119 F. 231, it was held that an army officer could not be arrested and committed for contempt in refusing to produce documents in his possession for use as evidence in the state court. These authorities might be multiplied indefinitely. The conclusion in all of them rests upon the fundamental principle stated in Ohio v. Thomas, supra, 283 (19 S. Ct. 453), that officers of the United States, when discharging duties under federal authority pursuant to and by virtue of valid federal laws, are not subject to arrest or other liability under the laws of the state in which their duties are being performed.

[7] The proper remedy in this and like cases is by habeas corpus. Section 753, Rev. St. of U. S. (Comp. St. § 1281), authorizes the issue of this writ when one "is in custody for an act done or omitted in pursuance of a law of the United States." Section 761, Rev. St. (Comp. St. § 1289), empowers this court to proceed in a summary way to determine the facts by hearing the testimony and arguments and thereupon disposing of the party as law and justice require. In nearly all of the cases above cited, the relief granted was upon application for habeas corpus issued and heard pursuant to these sections. For other cases to the same effect, see: New York v. Eno, 155 U. S. 89, 93, 95, 15 S. Ct. 30, 39 L. Ed. 80; Whitten v. Tomlinson, 160 U. S. 231, 240, 241, 16 S. Ct. 297, 40 L. Ed. 406; Johnson v. Maryland, 254 U. S. 51, 57, 41 S. Ct. 16, 65 L. Ed. 126.

[8] A certain discretion, it is true, is vested in this court to grant or refuse the writ, depending upon the circumstances of each case. The writ ought not to issue when the petitioner is held by a state or under its authority, except in cases of emergency. The present case, however, is one falling within that category. It presents conditions uniformly held adequate to justify the issue of the writ rather than to compel the petitioner to make defense in a state court and seek redress by appeal to the state court of last resort, and, if denied relief, thence by writ of error to the United States Supreme Court. He was a federal officer having charge of a large district and burdened with continuing duties to be

performed in various places and in numerous courts. Obviously he could not perform these duties while in jail. If he were compelled to seek redress in the manner indicated, the operations of the federal government might be much obstructed during a period of prolonged delay. In this situation the writ should issue. See Ohio v. Thomas, supra, pages 284, 285 (19 S. Ct. 453).

It is with deep regret that I have found it necessary to interfere in this drastic manner with an order of the state court. I am persuaded, however, had the facts and considerations herein summarized been brought to that court's attention, this apparent conflict of authority would have been avoided. Comity between courts of co-ordinate jurisdiction requires that every effort should have been made by the officers and agents of the United States to present this matter to the state court in its proper light.

The alternative writ will be made permanent, and the petitioner will be discharged. No judgment for costs will be entered against the sheriff.