PENNSYLVANIA TURNPIKE
COMMISSION

v.

Edgar A. McGINNES, District Director of Internal Revenue, Philadelphia, Manu-Mine Research & Development Company and Seaboard Surety Company.

Civ. A. No. 26783.

United States District Court
E. D. Pennsylvania.

Dec. 22, 1959.

Aaron M. Fine, Dilworth, Paxson, Kalish, Kohn & Dilks, Philadelphia, Pa., for plaintiff.

Walter E. Alessandroni, U. S. Atty., Michael L. Temin, Asst. U. S. Atty., Philadelphia, Pa., for defendant Edgar A. McGinnes.

Frederick G. McGavin, McGavin, DeSantis & Koch, Reading, Pa., for defendant Manu-Mine Research & Development Company.

S. Gordon Elkins, Daniel Mungall, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for defendant Seaboard Surety Co.

CLARY, District Judge.

Petitioner, Pennsylvania Turnpike Commission, brought this suit in the Common Pleas Court of Philadelphia County to enjoin the District Director of Internal Revenue at Philadelphia from paying to respondent, Manu-Mine Research and Development Company, or its assignee, respondent Seaboard Surety Company, a tax refund of approximately $900,000. The complaint alleges that in 1956 Manu-Mine paid more than $1,000,000 on its 1955 Federal income tax, using for this purpose money obtained by fraud from petitioner, and that the funds so paid were and are petitioner's property and have never belonged to Manu-Mine. The alleged fraud is presently the subject of a suit in equity in the Court of Common Pleas of Dauphin County, Pennsylvania. Pennsylvania Turnpike Commission v. Evans, 13 Pa.Dist. & Co.R.2d 290. Moreover, the Supreme Court of Pennsylvania has upheld a preliminary injunction by that court freezing Manu-Mine's assets. 1959, 392 Pa. 110, 139 A.2d 530. Petitioner further claims that the Director is about to make a refund of this money to Manu-Mine and unless he is restrained from so doing they will suffer irreparable harm.

The prayer for relief seeks (1) an injunction against the District Director of Internal Revenue or his successor to prevent him from making any payment on account of any claim for refund pending final determination of petitioner's right to any of the funds from which said income taxes were paid; (2) an injunction against Manu-Mine from attempting to cause such payments to be made to defendant Seaboard Surety Company by creating or perfecting or attempting to create or perfect any lien with respect to the funds, and (3) a mandatory injunction directing the District Director to pay said funds to petitioner, upon a determination that said funds are justly due and owing to them from Manu-Mine. The Director has not opposed this suit or filed a brief in it. He has agreed to await its outcome before making any refund.

The action was removed to this Court by the District Director upon a petition made pursuant to Section 1442(a) (1) of Title 28 U.S.C.A., which provides for removal of any action brought against an officer of the United States "for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for * * * the collection of the revenue." This is not a diversity case.

Prior to filing the present action in the Common Pleas Court of Philadelphia County, petitioner had commenced an *original* action in this Court based on the very same claim for relief. Pennsylvania Turnpike Commission v. McGinnes, D.C.E.D.Pa.1958, 169 F.Supp. 580, 581, 582. The District Court's finding that *original* jurisdiction existed under Section 2463 of Title 28 U.S.C.A., which provides that "property 'taken or detained under any revenue laws of the United States * * * shall be deemed to be in the custody of the law and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof' ", was reversed by the Circuit Court, 3 Cir., 1950, 268 F.

2d 65 (McLaughlin, C. J. dissenting), certiorari denied 361 U.S. 829, 80 S. Ct. 78, 4 L.Ed.2d 71. The Circuit Court held that no *original* jurisdiction existed.

The matter now before the Court is the motion of defendants, Manu-Mine Research and Development Company and Seaboard Surety Company, to dismiss the action for lack of jurisdiction. Although petitioner's brief raises several related grounds for dismissal, we feel that the matter can properly be disposed of on jurisdictional grounds alone, obviating the need to open the Pandora's box of issues which this case might otherwise present.

■ The Circuit Court's opinion makes it abundantly clear that no *original* jurisdiction exists in this Court on the present claim for relief. Our task is to determine whether jurisdiction exists upon removal of the action from the Courts of Pennsylvania. More properly stated, our task is to determine whether the Common Pleas Court of Philadelphia County has jurisdiction to enjoin a Federal officer in the performance of his duty, since our jurisdiction on removal corresponds with that of the State court.[1] The fact that it is the jurisdiction of the Pennsylvania courts which controls here was made clear by the Circuit Court when it pointed out that plaintiff in this suit is seeking the exercise of the traditional equitable jurisdiction of the Pennsylvania courts. See 268 F.2d 65, at page 68.

The question of whether a State court has jurisdiction to enjoin a Federal officer in the performance of his duty has not been squarely passed upon by the Supreme Court. See Hart & Weschler, The Federal Court & The Federal System, (1953) pp. 388 to 391. However, those cases which do touch on this delicate issue indicate a doubt as to the existence of such a jurisdiction.

In Tarble's Case, 1872, 13 Wall. 397, 20 L.Ed. 597, Mr. Justice Field stated the question to be, "[W]hether a State court commissioner had jurisdiction, upon habeas corpus, to inquire into the validity of the enlistment of soldiers into the military service of the United States, and to discharge them from such service when, in his judgment, their enlistment had not been made in conformity with the laws of the United States." The Supreme Court ruled that the State had no such power. In the course of the opinion the Court had this to say. "Such being the distinct and independent character of the two governments [federal and state], within their respective sphere of action, it follows that neither can intrude with its judicial process into the domain of the other, except so far as such intrusion may be necessary on the part of the National government to preserve its rightful supremacy in cases of conflict of authority. In their laws, and mode of enforcement, neither is responsible to the other. How their respective laws shall be enacted; how they shall be carried into execution; and in what tribunals, or by what officers; and how much discretion, or whether any at all shall be vested in their officers, are matters subject to their own control, and in the regulation of which neither can interfere with the other." See also Ableman v. Booth, 1858, 21 How. 506, 16 L. Ed. 169.

In Tarble's case, it was charged that the soldier was *wrongfully* held, implying that those Federal officers who detained him were not acting in conformity with Federal law. Nevertheless the Court refused to recognize the jurisdiction of a State court to pass on this question since "* * * the sphere of action appropriated to the United States is as far beyond the reach of the judicial process issued by a State judge or a State court, as if the line of division was

---

1. Lambert Run Coal Co. v. Baltimore & Ohio R. R. Co., 1922, 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671. This is not to say, of course, that certain cases not within this Court's original jurisdiction cannot be heard on removal. See Johnston v. Earle, D.C.D.Or.1958, 162 F.Supp. 149; Moore's Federal Practice, Sec. 0.60 (9) p. 662.

traced by landmarks and monuments visible to the eye."

In the present case, the defendant's action is admittedly exercised according to the law of the United States. If and when the District Director of Internal Revenue pays any tax refund to Manu-Mine he will do so solely as a Federal officer, solely pursuant to the law laid down by Congress, and not as a private party paying a private debt. Admittedly there is no discretion in his act of paying back any overpayment. This, however, does not make the act any more his personal action or any less federal action.

There is less danger of conflict, or serious interference in the operation of federal sovereignty where the act of its agent to be restrained is a so-called "ministerial" act. This Court, however, is unaware of any case in which the Supreme Court has made this distinction in conceding the jurisdiction of a State court to enjoin a Federal officer in the exercise of his duty. Moreover the plaintiff in this case calls upon the equitable power of a State court to act, precisely because it has no right at law to the remedy here sought. In Tarble's case, the Court assumed that the party on whose behalf the writ of *habeas corpus* was brought might well have a right at law to such relief, yet concluded that a State court had no jurisdiction to pass upon that right. Congress might confer that jurisdiction upon a State court if it chose to do so. This Court cannot.

In an early Supreme Court case, jurisdiction of a State court to issue a writ of *mandamus* to compel the registrar of a land office of the United States to take action on the plaintiff's claim of a pre-emptive interest in alleged federal public land was denied. McClung v. Silliman, 1821, 6 Wheat. 598, 5 L.Ed. 340. A number of later opinions have interpreted this case as denying the State courts the right to issue *mandamus* against a Federal officer in any situation. Northern Pacific Ry. Co. v. State of North Dakota, 1919, 250 U.S. 135, 39 S. Ct. 502, 63 L.Ed. 897; Kendall v. United States, 1838, 12 Pet. 524, 9 L.Ed. 1181; Ex parte Shockley, D.C.N.D.Ohio 1926, 17 F.2d 133; Armand Schmoll, Inc. v. Federal Reserve Bank, 1941, 286 N.Y. 503, 37 N.E.2d 225; Hinkle v. Town of Franklin, 1937, 118 W.Va. 585, 191 S.E. 291; but see Lewis Publishing Co. v. Wyman, C.C., 152 F. 200.

Although we do not pass upon the question of whether this action is in effect one for a writ of *mandamus*, the above cases are relevant on the issue before us. If a State court does not have jurisdiction to require a Federal officer to perform an act which Federal law requires him to perform, (to repay to a taxpayer overpayment of taxes) when that act involves no exercise of discretion by that officer, it would appear rather anomalous to recognize jurisdiction in that same State court to compel a Federal officer to perform an act which Federal law does not require him to perform (to pay a tax refund to a creditor of a taxpayer).

It will not be Federal law or a Federal tribunal which determines whether or not Manu-Mine defrauded the Pennsylvania Turnpike Commission of this money. The Dauphin County Court will determine that. Thus, the basis for the determination that the money here involved belongs to plaintiff will be the law of the Sovereign State of Pennsylvania. The decree which plaintiff would have entered here would be a decree based upon the equitable jurisdiction of the court of the Soverign State of Pennsylvania. The plaintiff relies solely upon the power of the Courts of Pennsylvania to act upon a Federal officer and direct him, in his official capacity, to perform an act which Federal law does not direct him to perform. We do not feel any such power exists.

The question in this case obviously goes far beyond any question of comity between the Commonwealth and Federal Courts. Our view as to the law of this matter in no way reflects on our respect for the competence, the integrity and the justice of the judicial branch of government of the Sovereign State of Penn-

sylvania. For those who might possibly misinterpret our view here, we reaffirm the high regard which we have for our brother Judges in the Pennsylvania Courts. However, the consequences of recognizing such jurisdiction would be extremely far-reaching. This Court does not feel that it is here presented with a situation which calls for our "pioneering" in such a delicate area.

Several courts have expressly denied the jurisdiction of a State court to enjoin alleged illegal or unauthorized action threatened by a Federal officer. Ex parte Shockley, supra; In re Turner, C.C.S.D.Iowa 1902, 119 F. 231; Shanks Village Committee, etc. v. Cary, 3 Cir., 1952, 197 F.2d 212, 217 (dictum of Biggs, C. J.); People ex rel. Brewer v. Kidd, 1871, 23 Mich. 440; Parry v. Delaney, 1941, 310 Mass. 107, 37 N.E.2d 249. See also Warren, Federal and State Court Interference, 43 Harv.L.Rev. 345, at 358 (1930), in which the author concludes that "State courts possess no power to enjoin a Federal officer."

There are at least two cases in which the argument that Pennsylvania has jurisdiction over a Federal officer acting in his official capacity has been rejected. The first is Passmore Williamson's Case, 1885, 26 Pa. 9. There the Supreme Court of Pennsylvania refused to grant a writ of *habeas corpus* for a man held in prison under a contempt order issuing out of the Federal District Court. The Court stated, "Those tribunals belong to a different judicial system from ours. They administer a different code of laws and are responsible to a different sovereign. The District Court of the United States is as independent of us as we are of it— as independent as the Supreme Court of the United States is of either." 26 Pa. 9, at page 17.

The second case is United States v. Owlett, D.C.M.D.Pa.1936, 15 F.Supp. 736, 741. This involved a bill in equity instituted by the United States of America to enjoin the respondents, an investigating committee created by a resolution of the Senate of the Commonwealth of Pennsylvania from conducting any investigation into the organization, administration and functioning of the Works Progress Administration, a Federal agency in operation in Pennsylvania. The Court granted the injunction, stating:

"The investigation by the respondents is an interference with the proper governmental function of the United States of America. *The complete immunity of a federal agency from state interference is well established.* (Emphasis added). [citations]. This principal of immunity from state control or interference applies to official papers and records of the United States of America. [citations]; and prevents a state from obstructing or interfering with employees of the United States of America in the discharge of their official duties, whether or not there is any express statutory provision for immunity."

Actually that case turned on a lack of legislative power, but the argument obviously would apply with equal force to the judicial branch of the State government.

Finally, in the case of Larson v. Domestic & Foreign Commerce Corp., 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628, the Supreme Court had occasion to make certain observations as to the circumstances under which an official of the United States may be enjoined. The Court concluded that the *only* circumstances which would allow such an injunction is where the official action "is not within the officer's statutory powers or if within those powers, only if the powers or their exercise in the particular case, are constitutionally void." 337 U.S. at page 702, 69 S.Ct. at page 1467. Every case cited by plaintiff (with one exception hereafter discussed), or uncovered by our independent research, which lends the least support to the plaintiff's position, falls squarely within one of these two categories. The present case clearly does not.

The case on which plaintiff relies most heavily to sustain this action and the

only one which does not appear to fall within the rule of the Larson case, supra, is Houston v. Ormes, 1920, 252 U.S. 469, 40 S.Ct. 369, 64 L.Ed. 667. In that case the Supreme Court held that a bill in equity in the District of Columbia would lie against the Secretary of the Treasury to establish an equitable lien for attorney's fees upon a fund in the United States Treasury, appropriated by Congress for payment to a specified person. Despite objections on jurisdictional grounds, the Court upheld the suit. However, there appears to be a clear distinction in that case (which is the only one of its kind) and the present one. The decision in the Houston case was specifically predicated upon the right of the District Court for the District of Columbia to issue a writ of *mandamus* to compel the payment of the fund in question to the person entitled to it under the Act of Congress. Cox v. United States, 1869, 9 Wall. 298, 19 L.Ed. 579. The parties in that suit conceded the fact that the District of Columbia Court had such jurisdiction. No such jurisdiction exists in the Courts of Pennsylvania. See citations supra.

In the face of the foregoing authority this Court feels constrained to dismiss this action for lack of jurisdiction over the subject matter. We need make no disposition of the other serious problems involved. However, the plaintiff is not without a remedy. The facts disclose that the defendant, Manu-Mine Research and Development Company, is at present under an injunctive order of the Common Pleas Court of Dauphin County freezing its assets. Such an order will preclude the defendants from improperly disposing of any assets, including any possible tax refund. If the injunction in that Court is not broad enough to protect this asset it can undoubtedly obtain any necessary relief there.

One final problem remains for disposition. As set forth above, plaintiff here, in addition to its action against the Director of Internal Revenue, has also asked for equitable relief respecting the other two defendants. Counsel for the plaintiff in his brief has asked that should this Court determine that there was no jurisdiction over the subject matter as respects the Director of Internal Revenue to exercise its discretion under the provisions of Title 28 U.S.C.A. § 1441(c) and remand the case to the State Court for disposition of its claim against Manu-Mine Research and Development Company and Seaboard Surety Company. Therefore, the order to be entered concurrently herewith will, in addition to dismissing the action as against the Director of Internal Revenue, remand the case to the State Court for disposition of the action as against Manu-Mine Research and Development Company and Seaboard Surety Company.